Lorraine MORAN, Respondent,

v.

**RAPID CITY AREA SCHOOL DISTRICT NO. 51–4, PENNINGTON AND MEADE COUNTIES, Appellant.**

No. 12452.

Supreme Court of South Dakota.

Argued Feb. 21, 1979.

Decided July 18, 1979.

* Order granting writ of quo warranto in *Rapid City Journal v. Tice # 12353*.

William H. Coacher, Sturgis, for respondent.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellant.

MORGAN, Justice.

This is an appeal from a decision of the Circuit Court for the Seventh Judicial Circuit, Pennington County, reversing on procedural grounds the decision of the school board of Rapid City Area School District No. 51–4 (appellant) not to renew the teaching contract of Lorraine Moran (respondent), for the 1977–78 school year. The procedural defects observed by the trial court were: (1) The "apparent" bias of the president of the school board, presiding officer at the hearing; and (2) the refusal to permit respondent and her lay counsel an opportunity to see two exhibits prior to their admission into evidence.[1] We reverse the decision of the trial court on the procedural issues and remand it for further consideration.

The issues before us are: (1) Whether the trial court misunderstood the scope of review under the trial de novo proceeding of SDCL 13–46–6; (2) whether the president of the school board was disqualified from presiding at a hearing held at respondent's request, pursuant to SDCL 13–43–10.1, to determine whether the school board should reconsider the decision not to renew respondent's contract for the 1977–78 school year; and (3) whether the refusal of examination of two exhibits before they were received into evidence was so egregious an error as to violate respondent's constitutional right to due process.

The procedural facts pertinent to our decision begin with the initial decision of the school board at a meeting on March 15, 1977, not to rehire respondent for the 1977–78 school year. She was so notified the following day by letter from the school board president, which letter also informed respondent of her right to request a hearing before the school board in executive session at which the school board would be prepared to state the reasons for the determination, and at which respondent could present any evidence she wished to present. Respondent was also advised of her right to have counsel present. The hearing was scheduled for March 30. On March 29, respondent was informed who would be testifying in support of the recommendation for nonrenewal; a list of parents who had made various requests regarding her would be presented; and there may be a letter from one of her pupil's mother presented. The hearing was postponed until April 19, 1977, because of a severe snowstorm. At the hearing, which was presided over by the

---

1. The trial court did not rule on the question of sufficiency of the evidence raised by the appeal from the school board's decision.

president of the school board, in addition to the testimony of witnesses, a list of twenty-three parents who had requested either that their child not be assigned to respondent's classroom or that their child be assigned to another teacher (Exhibit B) and a letter written by a parent of one of respondent's pupils (Exhibit C) were presented and received into evidence. Respondent's testimony in support of her retention was also received. Following the hearing, the school board came out of executive session and voted unanimously to reaffirm the decision not to renew respondent's contract. On appeal, the circuit court trial consisted of "reconstituting" the hearing with the witnesses, as well as the four board members themselves, testifying as to what had transpired at the school board hearing.

At the conclusion of the hearing on December 14, 1977, the trial court announced its decision from the bench. This was incorporated in its decision and order entered on January 4, 1978. Although the record does not disclose a formal waiver of findings of fact and conclusions of law, lacking any objection in the record to the form of the decision, we will treat the findings and conclusions contained in the decision as findings of fact and conclusions of law.

We first review the issue of the scope of review on appeal from the decision of the school board.

 A teacher who is aggrieved by a decision of a school board is entitled to appeal that decision to the circuit court for a trial de novo. SDCL 13–46. This trial de novo, however, is not a trial de novo in the true sense of the phrase. It is a limited type of hearing at which the circuit court takes evidence and hears testimony solely for the purpose of determining the legality, and not the propriety, of the school board's decision. *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, 265 N.W.2d 262 (S.D.1978); *Collins v. Wakonda Ind. School Dist. No. 1*, 252 N.W.2d 646 (S.D.1977);

*Mortweet v. Ethan Bd. of Ed., Davison Cty.*, 241 N.W.2d 580 (S.D.1976). It differs from a true trial de novo in that the court may not substitute its judgment for that of the school board, and the court need not justify the school board's decision by a preponderance of the evidence received. *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, supra. This interpretation of the term "trial de novo" for the purposes of SDCL 13–46 is based upon the constitutional doctrine of separation of powers. School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law. In *Dunker v. Brown County Board of Education*, 80 S.D. 193, 203–204, 121 N.W.2d 10, 17 (1963), this court stated:

> Only when the legislative agency has acted unreasonably, arbitrarily, or has manifestly abused its discretion in exercising legislative authority may the courts interfere with the action of the county boards in this area. [Citations omitted.]
>
> The constitutional separation of powers cannot be done away with by legislative action. [Citations omitted.] Consequently, [SDCL 13–46–6], providing for de novo trials when county school board matters are appealed to the circuit court may not be given a literal construction. To do so would be to presume that the legislature intended to confer upon the courts powers inconsistent with the discharge of their inherent judicial functions. This we may not do.[2]

The power to contract with teachers is vested in the school board and the decision to renew or not renew a teacher's contract is not one for the judiciary. As long as the school board is legitimately and legally exercising its administrative power, the courts may not interfere with nor supplant the school board's decision-making process.

2. While the author agrees with Presiding Judge Hanson in his dissent in *Dunker v. Brown County Board of Education*, 80 S.D. 193, 121 N.W.2d 10 (1963), wherein he states that the majority sweeps with too wide a broom, I agree with the quoted portion of the majority opinion.

*Mortweet v. Ethan Bd. of Ed., Davison Cty.*, supra.

██ The scope of the review by the circuit court is limited, then, to determining the legality of the school board's decision. In determining whether the decision was legal, the circuit court reviews the decision in two aspects. First, whether the school board acted legally, and second, whether the school board's decision was arbitrary, capricious, or an abuse of their discretion. *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, supra; *Collins v. Wakonda Ind. School Dist. No. 1*, supra; *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, supra. This scope of review, however, has been variously stated in the above cases, causing some confusion. For that reason, we will analyze and explain the guidelines for application of this scope of review.[3]

██ First, the circuit court must examine the procedural legality of the school board's action. This includes not only whether the school board was vested with statutory authority to act, which is seldom questioned, but it also encompasses the school board's compliance with whatever procedural requirements the law may impose. In the instant case, the statutory procedural requirements are contained in SDCL 13–43–9.1 through SDCL 13–43–10.1 and those procedural requirements must be followed. Our state and federal constitutions, however, also impose procedural requirements and compliance with those requirements, in addition to the statutory requirements, is necessary for the school board's action to be legal. A violation of an individual's due process, equal protection, first amendment, or other rights guaranteed by our state or federal constitutions, even if there is full compliance with the statutory requirements, is grounds for a determination that the school board acted illegally and therefore its decision was illegal.

██ The second aspect of the circuit court's review is a determination whether or not the school board's decision was arbitrary, capricious, or an abuse of discretion. A conclusion by the circuit court that the school board did act in such a manner is, similarly yet independently, a ground for a determination that the school board acted illegally and its decision was illegal. We agree with that portion of Presiding Judge Hanson's dissent in *Dunker v. Brown County Board of Education*, supra, wherein he stated:

Ours is a government of laws and not of men. This is a fundamental concept of our form of government. In essence, it means that personal and property rights must be determined according to stated and defined rules of law rather than by the unbridled whim and fancy of administrative officials and agencies. Accordingly, the legislature cannot constitutionally delegate unrestrained power and unlimited discretionary authority. To do so would constitute an unlawful delegation of legislative power. "In order to avoid an unlawful delegation of power, the legislative authority must declare the policy or purpose of the law and, as a general rule, must also fix the legal principles which are to control in given cases by setting up standards or guides to indicate the extent, and prescribe the limits, of the discretion which may be exercised under the statute or ordinance by the administrative agency. . . . " (Citation omitted.) 121 N.W.2d at 18.

In determining whether the school board's decision was arbitrary, capricious or an abuse of discretion, the circuit court must ascertain whether there is substantial evidence to support the school board's decision.[4] *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, supra; *Collins v. Wak-*

3. In *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, 265 N.W.2d 262 (S.D.1978), a different scope of review was eventually used due to the unusual factual situation presented there.

4. Substantial evidence means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. *Application of Ed Phillips & Sons Company*, 86 S.D. 326, 195 N.W.2d 400, 405 (1972); and see SDCL 1–26–1(8).

onda Ind. School Dist. No. 1, supra; *Mortweet v. Ethan Bd. of Ed., Davison Cty.,* supra. If the circuit court finds substantial evidence in the record to support the school board's decision, it must then find that the decision was not arbitrary, capricious or an abuse of discretion.[5]

In this case, the trial court reversed the school board's decision on procedural grounds. In light of the above discussion, it is clear that the trial court determined that the actions of the school board were illegal and therefore that the decision was likewise illegal. Having determined that the trial court did adhere to the proper scope of review, we must decide whether the trial court erred in determining that the actions of the school board were indeed illegal. The proper scope of review for this court is, of course, the same as that of the trial court. We are not bound by a presumption that the trial court's decision is correct. *Collins v. Wakonda Ind. School Dist. No. 1,* supra. See also *Piper v. Neighborhood Youth Corps,* 241 N.W.2d 868 (S.D.1976).

The next issue we discuss is whether the trial court erred in reversing the school board's decision because of the alleged bias of the president.

The trial judge based his finding of bias solely on the fact that the name of the school board president's wife was on the list of parents who had objected to respondent teaching their children (Exhibit B). The school board president's response was that he had no bias or prejudice against respondent based on his wife's expression, and if

his wife had, in fact, told him that she had objected he had forgotten about it.[6] In examining this issue, we must initially note that there is a strong presumption that the decision of the school board was made in good faith and that the members of the school board acted in good faith at all times. *Collins v. Wakonda Ind. School Dist. No. 1,* supra; *Schneider v. McLaughlin Independent Sch. Dist.,* 241 N.W.2d 574 (S.D.1976).

Although SDCL 13–43–10.1 does not contain a requirement of fairness and impartiality on the part of the school board, Mrs. Moran's constitutional right to due process mandates that she be given fair and impartial consideration by the school board. *Schneider v. McLaughlin Independent Sch. Dist.,* supra. See also *Hortonville Dist. v. Hortonville Ed. Assn.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Respondent's burden is heavy, however, and she must make a showing sufficient to prove the existence of actual bias in contravention of her constitutional due process rights before this court will be willing to tamper with the decision of the school board, a duly elected body with the statutory authority and responsibility to govern the affairs of the school district. *Schneider v. McLaughlin Independent Sch. Dist.,* supra. See also *Hortonville Dist. v. Hortonville Ed. Assn.,* supra, at 426 U.S. 495, 496, 96 S.Ct. 2308. Upon careful review, we hold that respondent failed to sustain that burden.

School districts are creatures of statute by virtue of constitutional mandate.[7] We

5. Effective July 1, 1978, SDCL 1–26–36 was amended by replacing the "substantial evidence" test with the "clearly erroneous" test. Since the scope of review in this type of case was partially taken from SDCL 1–26–36, see *Mortweet v. Ethan Bd. of Ed., Davison Cty.,* 241 N.W.2d 580 (S.D.1976), it would seem appropriate that the scope of review for cases of this type heard by the circuit court after July 1, 1978, be similarly amended by the substitution of the "clearly erroneous" test for the "substantial evidence" test. This question, however, is not before us and therefore is not herein decided.

6. We note that while the trial court found such testimony unlikely it specifically found that the rulings on admission of evidence which the

court described as "erroneous" were attributable not to any malice, ill will or prejudice, but to the presiding officer's lack of legal training and expertise.

7. Article VIII, § 1, of the South Dakota Constitution provides:

The stability of a republican form of government depending on the morality and intelligence of the people, it shall be the duty of the Legislature to establish and maintain a general and uniform system of public schools wherein tuition shall be without charge, and equally open to all; and to adopt all suitable means to secure to the people the advantages and opportunities of education.

must look therefore to the legislative scheme. SDCL 13–43 governs the employment of teachers generally, and SDCL 13–43–9.1 through SDCL 13–43–10.1 inclusive, commonly referred to as "continuing contract law," assures a teacher who is "in or beyond [his or her] third full term of employment" entitlement to certain procedural steps including proper notice, a hearing, and stated reasons for dismissal. SDCL 13–43–10.1 in pertinent part specifically provides:

> Any teacher to whom notification has been given as provided in § 13–43–10 may, within seven days after the receipt of the same, request in writing a hearing before the school board, meeting in executive session, at which hearing the board shall state the reasons for its determination. . . . At such hearing the teacher . . . may have counsel present and shall have full opportunity to present all relevant evidence. After considering all the relevant evidence the board shall sustain or revoke its original determination.

 The due process aspect of this statutory provision for hearing was thoroughly discussed in *Schneider v. McLaughlin Independent Sch. Dist.*, supra, wherein this court discussed the impossibility of having a hearing before a board that had absolutely no prior knowledge of the facts unless provision was made for an independent hearing examiner or board, and concluded that: "[I]t is sufficient to meet the requirements of a fair tribunal that the board base its decision upon competent, credible evidence and that there be no evidence of actual bias toward the teacher whose contract is not being renewed." 241 N.W.2d at 577.[8] We continue to be persuaded by the logic of this opinion and, in the light of the trial court's failure to find that any actual bias existed and the failure of the record to

disclose any such actual bias, we hold that the trial court's findings do not sustain its conclusion that respondent was deprived of a fair hearing.

The last issue we consider is whether the trial court erred in determining that denial of the opportunity for respondent and her counsel to examine the list (Exhibit B) and the letter (Exhibit C) in advance of the hearing constituted a flagrant violation of fundamental due process. We hold that it did so err.

The trial court erred in that it sought to raise the procedural hearing to the level of an adversary proceeding complete with all the procedural safeguards of such a proceeding. The trial court complained that the presiding officer had no legal training, elevated a lay person to the status of counsel (although our courts have consistently refused to allow lay counsel to appear), condemned harshly the introduction of hearsay evidence, and decried the lack of counsel for the school board. It pictured the proceeding as an adversary proceeding before the school board with the school superintendent and his administrative staff represented by the school board attorney on one side and respondent and her counsel on the other.

 The statutory scheme as outlined in SDCL 13–43–10.1 does not provide for an adversary proceeding. *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, supra. Very clearly and simply it provides for a hearing before the school board at which time the school board shall state the reasons for its determination. It affords the teacher the right to counsel and the opportunity to present her evidence. In short, it gives the teacher an opportunity to hear the complaints against her and to present evidence

---

8. See also *Norbeck v. Davenport Community Sch. Dist.*, 545 F.2d 63 (8th Cir. 1976) and *Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). In *Norbeck*, the Eighth Circuit Court of Appeals ruled that the fact that a member of the school board attempted to influence a member of the community to testify against the teacher did not evidence sufficient bias to constitute a deni-

al of the teacher's due process rights, and in *Hortonville*, the United States Supreme Court ruled that the fact the school board had been involved in intense, lengthy and fruitless negotiations with the teachers prior to the school board's dismissal of a large number of said teachers did not constitute sufficient bias to be a denial of the teachers' due process rights.

in support of his/her retention. This does not mandate nor necessitate the use of strict evidentiary rules. The essential requirement is that the school board's decision be based upon competent, credible evidence. *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, supra. The authority is still in the school board to sustain or revoke its original determination and that is as it should be, for it is still at that point an administrative determination.

We hold, therefore, that the circuit court erred in reversing the school board's decision on the stated grounds and, since the circuit court did not reach the question of whether the decision was arbitrary, capricious or an abuse of discretion, we remand the case to the circuit court for further proceedings.

WOLLMAN, C. J., and DUNN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Fundamental in this nation's system of government is a system of checks and balances created by a legislative, executive and judicial branch of government. School boards are created by state statute pursuant to constitutional mandate to achieve a general and uniform system of public schools equally open to all, and to provide the people the advantages and opportunities of an education. People whose lives are vitally affected by administrative boards such as a school board have constitutional guarantees, separate and apart from state laws, to insure that they are given fair hearings. A twenty-year veteran teacher of the Rapid City Public Schools is entitled to due process to determine if she will be stripped of her livelihood. The question in this case is whether or not she received due process. The trial court did not think so and neither do I.

By virtue of Mrs. Moran's tenure as a teacher in the Rapid City School System, under this state's continuing contract law, she had a property right in and to her contract with the Board of Education and a reasonable expectation that her contract would continue. This entitled her to due process of law in accordance with the principles expressed in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). This position was likewise taken in the case of *Schneider v. McLaughlin Independent Sch. Dist.*, 241 N.W.2d 574 (S.D. 1976).

The requirements of due process vary within the context of each individual set of facts.* The teacher was entitled to have a meaningful hearing presided over by an impartial decision maker. Instead, one Lyle Baker, president of the Board of Education, who had a son in her classroom and who was thus actually interested and personally involved therein, presided over the teacher's hearing. I maintain he was biased. Bias is not an ugly word. It is an inclination of temperament or outlook. It is a bent, tendency or trend to think in a preconceived way. During the course of the hearing, he took the chief role in questioning witnesses. His wife's name headed a list of parents requesting that their children not be placed in Mrs. Moran's room, but instead be placed in the other sixth grade teacher's room for the 1976–77 school year. At the hearing Mr. Baker decided all matters of procedure, swore in all witnesses, and ruled on the admission of evidence. With his wife heading the list of protestants, his mind was not in that free and open state of impartiality. In determining the issue of impartiality, not only must the procedures be fair, the very appearance of complete fairness must also

* Minimal requirements of due process [with respect to termination of teacher's employment] are generally recognized to be: (1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them; (2) notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal. *Brouillette v. Board of Dir. of Merged Area IX, Etc.*, 519 F.2d 126, 128 (8th Cir. 1975).

be present. *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Wall v. American Optometric Association, Inc.*, 379 F.Supp. 175 (N.D.Ga.1974); *Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501 (1974).

In the testimony of Mr. Lyle Baker, the following questions and answers were elicited:

Q. Now, calling your attention then to the Exhibit that was introduced that you talked about containing a list of several parents, I'd like to have you look at name number one, please. What is the name?

A. Mrs. June Baker.

Q. That's your wife?

A. That's correct.

Q. Thank you, sir. So you had a son in the sixth grade at Wilson School during this entire matter, is that right?

A. During which entire matter?

Q. During the hearing on April 19th, sir?

A. That's correct.

Q. And did you consider this at all in your deliberations? Did you ever consider disqualifying yourself, sir?

A. I think the thought entered my mind, yes.

Q. But you did not?

A. That's correct.

\* \* \* \* \* \*

Q. As chairman, as a matter of fact?

A. That's correct.

There were two exhibits, both containing conclusions and rank hearsay, admitted into evidence by Mr. Baker. Mr. Baker refused to permit the teacher and her lay counsel an opportunity to see these two exhibits, marked B and C, prior to the exhibits being admitted into evidence. Exhibit B was compiled by the principal. At the top, followed by nineteen signatures, it expresses: "The following people requested the other Sixth Grade Teacher or requested their child not be in Mrs. Moran's room for the 1976–77 school year." The middle part of

Exhibit B listed the names of two parents who complained. The bottom of the page reflects two parents who requested that their child not be in Mrs. Moran's room for the 1977–78 school year. Not one reason was cited or specific complaint noted. No cross-examination was afforded. Mr. Baker summarily denied Mrs. Moran and her lay counsel an opportunity to see Exhibit B. Lay counsel made a timely objection and objection was overruled.

I do not believe in this kind of clandestine justice. Mrs. Moran and her lay counsel had no opportunity to refute this list, qualify it, or meet it by calling witnesses to ameliorate its highly damaging effect. Lay counsel requested a continuance of the hearing until he and Mrs. Moran had an opportunity to contact the parents who were named in the list. Mr. Baker denied it, expressing that the hearing had already been postponed once and that the board would like to get the case over with as it was getting late. Although Mr. Baker was not legally trained, he ought not to be exonerated from a sense of fair play. He knew he had a direct interest in the outcome and he should have recused himself. Administrative proceedings are not an exception to the requirement of due process.

The absence of procedural safeguards is again evidenced by Mr. Baker's refusal to permit Mrs. Moran and her lay counsel to see or question a mother's handwritten letter, marked Exhibit C, whose child was under Mrs. Moran's instruction. It was admitted into evidence over timely objection. I view all of this as a violation of constitutional due process. " 'The fundamental requisite of due process . . . is the opportunity to be heard.' [citation omitted] The hearing must be 'at a meaningful time and in a meaningful manner.' [citation omitted]" *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287, 299 (1970). See also, *Hortonville Dist. v. Hortonville Ed. Asso.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).

The United States Supreme Court in *Goldberg*, supra, further stated:

What we said in *Greene v. McElroy*, 360 U.S. 474, 496–497, 3 L.Ed.2d 1377, 1390, 1391, 79 S.Ct. 1400 (1959), is particularly pertinent here:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment . . . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."

397 U.S. at 269–70, 90 S.Ct. at 1021, 25 L.Ed.2d at 300.

Our state law, through the authorization of a trial *de novo*, permits an independent inquiry into the facts. Under the *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, 241 N.W.2d 580 (S.D.1976) decision, referred to in the majority opinion, the trial court in this case correctly took testimony for the limited purpose of determining the legality of the School Board's decision. The trial court could not judicially approve the tainted proceedings, bias of the Board chairman, or procedural errors, and thus remanded Mrs. Moran's case to the School Board for a fair rehearing. Therefore, the trial court properly concluded that it should not rule upon the evidence as to whether the School Board's decision was arbitrary, capricious, or an abuse of discretion. Under SDCL 13–46–6, the legislature has given broad and sweeping powers to the circuit judge to enter "[S]uch final judgment or order as the circumstances and every right of the case may require and such judgment or order as may be enforced by writ of execution, mandamus, or prohibition, or by attachment as for contempt." Having determined that the hearing was unfair and a violation of due process, the trial court entered such order as it believed the circumstances and every right of the case required. Specifically, the judicial branch of government, acting as a check on the legislative branch of government, which both constitutionally and legislatively it was empowered to do, ordered that:

(1) The decision of the Board of Education of April 19, 1977, not to renew Mrs. Moran's teaching contract was reversed and rescinded and her teaching contract was reinstated retroactively to the date it expired under the Board decision, the contract to continue in full force and effect unless terminated after rehearing in accordance with the trial court's decision;

(2) The District was to pay Mrs. Moran all salary, allowances and monetary benefits in the amount to which she would have been entitled had the Board's decision been to renew her teaching contract, the payments to continue unless and until her teaching contract was terminated following a rehearing pursuant to the Court's remand;

(3) The proceedings were remanded to the Board of Education for a rehearing pursuant to SDCL 13–43–10.1;

(4) Board President Baker was disqualified from participating in any future proceedings concerning Mrs. Moran; and

(5) The rehearing before the Board was to be conducted in accordance with the guidelines set forth in SDCL 1–26–17 through 1–26–26.

I would conclude with the eloquent words of Judge Adams who, in addressing the importance of due process in administrative proceedings, expressed:

The absence of fundamental fairness in the proceedings followed by the South Dakota Board of Examiners in Optometry spawned this litigation. The trial court was asked to examine the situation and concluded that due process requirements had been violated. We affirm and decide no more. However, this and other similarly constituted boards should reexamine their structures and procedures, remembering that the final refuge people have in all governmental procedures is that of due process, the eternal friend of justice and unrelenting foe of undue passion.

*Mordhorst,* supra, 223 N.W.2d at 506.

This twenty-year veteran of the teaching profession is without a contract, job, salary, and retirement at this critical juncture of her life. Time is of the essence and I would affirm the trial court in toto.