William E. KELLOGG and Gettysburg School District No. 53–1, Appellants and Appellees,

v.

HOVEN SCHOOL DISTRICT NO. 53–2, Respondent and Appellant.

No. 17332.

Supreme Court of South Dakota.

Considered on Briefs April 23, 1991.

Decided Dec. 11, 1991.

Craig E. Smith, Gettysburg, for appellants and appellees.

David A. Von Wald, Hoven, for respondent and appellant.

SABERS, Justice (On Reassignment).

Hoven School District appeals from a circuit court order which reversed a decision by the school board denying a minor boundary change. We affirm.

## FACTS

In January, 1990 William Kellogg (Kellogg) petitioned to the school boards of the Gettysburg and Hoven school districts for a minor boundary change. He sought to have his property transferred from the Hoven School District to the Gettysburg School District. The land proposed for transfer was co-terminus with the common boundary of the two school districts as required by SDCL 13–6–84.1.

The land proposed for transfer had an assessed value of $934,422. At that time the Hoven School District had a total assessed valuation of $82,338,000[1] and the property to be transferred was less than two percent of the total assessed value of that district. The Kellogg petition was signed by a majority of the voters residing in the area proposed for transfer in accordance with SDCL 13-6-85.

Kellogg owns a large cattle-feeding operation. The majority of his business and social activities take place in Gettysburg. They attend church and participate in school activities there.

Kellogg has three children who were in the sixth, fourth, and kindergarten grades in the 1990-1991 school year. They have always attended school in Gettysburg, with the Hoven School District paying tuition and transportation.

The petition was approved by the Gettysburg School Board but denied by the Hoven School Board. The reasons for the denial by the Hoven School Board (Board) were set forth in a letter to Kellogg dated July 11, 1990:

a. The amount of land requested is much more than is needed to connect the two districts and is an excessive amount;

b. The loss and total assessed valuation of this territory to the Hoven School District is significant in light of uncertain school finances in South Dakota;

c. The excess loss, combined with numerous minor boundary changes already granted in past years is causing substantial financial impact to the Hoven School District; and

d. The Hoven School District is already paying tuition and mileage for the children to the Gettysburg school and the board's decision should not adversely affect the children's education.

It is interesting to note that had the transfer been approved, the income to the Hoven School District would be reduced by approximately $7,500, but tuition and transportation expenses of about $10,800 to educate the Kellogg children would be eliminated.

## STANDARD OF REVIEW

On appeal, Hoven School District argues that the trial court erred in not giving the proper deference to its school board decision. It asserts that the trial court, rather than determining whether the Board abused its discretion, impermissibly substituted its judgment for that of the Board.

SDCL 13-6-85 provides in part:

A boundary change, affecting not more than two percent of the assessed valuation of the school district from which the area is to be taken, may be made upon an application for a boundary change to the school board of the school district from which the area is to be taken and to the school board of the school district to which the area is to be annexed, in the form of a petition signed by over fifty percent of the voters residing in the area to be transferred by the boundary change. Copies of the petitions shall also be delivered by the petitioners to the board of county commissioners having jurisdiction over the school districts affected. Any petitioner who is aggrieved by a decision of the school board under this section may appeal that decision.

An appeal from the decision of the school board may be made to the *circuit court* in the time and manner specified by § 13-46-1 or to the state superintendent of education within thirty days from the date of the decision of the school board by filing a notice with the superintendent of the school board and mailing a copy thereof to the superintendent of education.... *Nothing in this section shall affect the right of an aggrieved party to appeal from the decision of the school board to the circuit court.* (Emphasis added.)

SDCL ch. 13-46 applies to appeals on school matters. SDCL 13-46-6 provides:

---

**1.** The Gettysburg School District had an as- sessed valuation of approximately $45 million.

The trial in the circuit court shall be de novo[2] according to the rules relating to special proceedings of a civil nature so far as such rules are applicable and not in conflict with the provisions of this chapter and the court shall enter such final judgment or order as the circumstances and every right of the case may require and such judgment or order may be enforced by writ of execution, mandamus, or prohibition, or by attachment as for contempt.

In *Dale v. Board of Education, Etc.*, 316 N.W.2d 108, 112 (S.D.1982), we stated "on appeal to the circuit court, pursuant to SDCL 13–46–6, the doctrine of separation of power limits the scope of review to that provided in SDCL 1–26–36."[3]

## WHETHER THE CIRCUIT COURT WAS CLEARLY ERRONEOUS IN REVERSING THE BOARD'S DECISION WHICH DENIED KELLOGG'S PETITION FOR A MINOR BOUNDARY CHANGE

■ School boards may be "creatures of the legislature," but when they rule on the petition of a taxpayer to transfer his property to another school district, the circuit court has appellate jurisdiction over the board's decision, SDCL 13–6–85, and the decision may be overturned if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." SDCL 1–26–36(6).

In other words, the circuit court has the authority to reverse a school board's arbitrary decision even when the board has acted "legally" in the narrow sense of being procedurally correct.

In determining whether the decision was legal, the circuit court reviews the decision in two aspects. First, whether the school board acted legally, and second, *whether the school board's decision was arbitrary, capricious, or an abuse of their discretion.*

*Moran v. Rapid City Area Sch. Dist.*, 281 N.W.2d 595, 599 (S.D.1979) (citations omitted) (emphasis added). *Moran* stated:

The second aspect of the circuit court's review is a determination whether or not the school board's decision was arbitrary, capricious, or an abuse of discretion. *A conclusion by the circuit court that the school board did act in such a manner is, similarly, yet independently, a ground for a determination that the school board acted illegally and its decision was illegal.* We agree with that portion of Presiding Judge Hanson's dissent in *Dunker v. Brown County Board of Education*, supra, wherein he stated:

'... Accordingly, the legislature cannot constitutionally delegate unrestrained power and unlimited discretionary authority. To do so would constitute an unlawful delegation of legis-

2. "An appeal from a school board's decision is not a trial de novo in the true sense of the phrase. The appeal has the limited function of receiving evidence for 'determining the legality, and not the propriety, of the school board's decision.'" *Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595, 598 (S.D.1979). "School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law." *Id.* at 598.

3. SDCL 1–26–36 provides:
The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substan-

tial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in light of the entire evidence in the record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

lative power....' [80 S.D. 193,] 121 N.W.2d [10] at 18.

281 N.W.2d at 599 (emphasis added).

In this case, the trial court entered Conclusion of Law #3, which stated as follows:

3. That the Petitioners had the burden to show that the Hoven School District had acted arbitrarily or capriciously or unsupported by the evidence and *the burden has been met.* (Emphasis added).

Under *Moran,* this is a determination by the trial court that the board acted illegally.

 The circuit court found that Board's decision was arbitrary and capricious. *That* is the decision this court is reviewing, not Board's original decision.[4] After a circuit court has decided an appeal from an agency or school board,

[a]n aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. *The appeal shall be taken as in other civil cases.* The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment *of the circuit court* as it does to other appeals from the circuit court. *Such appeal may not be considered de novo.*

SDCL 1–26–37 (emphasis added). Although we have held that our review of an administrative agency's decision is "unaided by any presumption that the circuit court's decision was correct," *Appeal of Templeton,* 403 N.W.2d 398, 399 (S.D. 1987), that rule presupposes that a formal hearing was held at the agency level and that the circuit court reviewing the decision relied on the written record. *See e.g., Strain v. Rapid City Sch. Bd.,* 447 N.W.2d 332, 334–335 (S.D.1989); *Application of Koch Exploration Co.,* 387 N.W.2d 530, 536 (S.D.1986); *Application of N.W. Bell Tel. Co.,* 382 N.W.2d 413, 415–416 (S.D. 1986). In contrast, when the circuit court

has essentially nothing in writing from a school board to review,

the trial court is mandated to hear evidence, and weigh the testimony of the witnesses. The trial court must then determine whether substantial evidence supports the board's decision ... and must enter findings. *To attack the trial court's findings on appeal to this court, Board must show they are clearly erroneous.*

*Jager v. Ramona Bd. of Ed.,* 444 N.W.2d 21, 26 (S.D.1989) (emphasis added).

Board held no formal hearing and made no findings of fact or conclusions of law about Kellogg's boundary change petition. The only written "record" of Board's deliberations are a few sentences from the minutes of six board meetings and a one-page letter to Kellogg denying the petition. In contrast, the circuit court conducted a "trial de novo" on August 29, 1990, and took substantial testimony and evidence which produced a 65–page transcript, three pages of findings and conclusions, and an order reversing Board.

 Under the applicable rules of appellate procedure, we must affirm the circuit court unless its determinations are clearly erroneous. SDCL 1–26–37; *Jager, supra.* Therefore, the question is not whether substantial evidence in the record supports *Board,* but whether substantial evidence in the record supports the *circuit court.*

Clearly it does. The majority of Kellogg's business and social activities take place in Gettysburg. They attend church and participate in school activities there. Kellogg has three children who have always attended school in Gettysburg. Kellogg lives 29 miles southwest of Hoven but only 7 miles west of Gettysburg. Aside from livestock butchering, he conducts all of his regular business in Gettysburg rather than Hoven. Furthermore, the Hoven district actually pays more to send the Kellogg children to school in Gettysburg than it would lose in property taxes if Kellogg

---

4. We realize that the 1990 legislature amended SDCL 13–6–85 to remove any presumption favoring the appellate rulings of the *state superintendent.* However, since this decision was appealed directly from Board to circuit court under SDCL 13–6–85, bypassing the superintendent, the 1990 amendment is not relevant to this case.

were permitted to transfer his property to the Gettysburg district. Even more revealing is the attached map of the respective school districts and the Kellogg property which shows graphically how close the Kelloggs are to Gettysburg and how far they are from Hoven. (See attached map). Kellogg argues that the Hoven school district pursues a policy of "land retention for the sake of land retention" despite the fact that it presently has 65% of the assessed property valuation of the total area but only 37% of the total enrolled pupils—including the 40 pupils it pays to send to the Gettysburg district. As the map shows, the Hoven district includes substantial land west of Highway 83 (approximately six complete townships extending up to 16 miles west of the highway) even though it operates no schools west of Highway 83.

Although Hoven School District objects to the characterization, Kellogg concludes that "[w]hat you have and what the Court obviously saw is a school district that is a 'tax shelter' school district." In contrast, Kellogg contends that he has a legal right and a moral responsibility to transfer sufficient land to the Gettysburg district to offset the increased burden his children will place on the Gettysburg system, even though it means that Kellogg would pay substantially more taxes there than he presently pays to the Hoven district.

Kellogg met all the threshold conditions and procedural requirements for a minor boundary change set forth in SDCL §§ 13–6–84.1, 13–6–85 and 13–6–86. In addition, the equitable factors considered in reviewing minor boundary changes—including the economic and social integration of the Kelloggs into the Gettysburg community, the lack of a tax avoidance motive on Kellogg's part and the physical placement to the Gettysburg district—also support the petition. *See, e.g., Shumaker v. Canova Sch. Dist.,* 322 N.W.2d 869, 871 (S.D.1982).

On the other side of the ledger, there really are no sound arguments against this minor boundary change. Board's reasons for denying Kellogg's petition dwell almost exclusively on the *hypothetical* financial impact the boundary change could have on the Hoven district, and fail to discuss any of the compelling factors which support the granting of the petition. Considering the number and the persuasiveness of those factors, as well as the lack of any indication that Board adequately considered them in arriving at its decision, the circuit court was not clearly erroneous in concluding that Board acted arbitrarily, capriciously or abused its discretion. On that basis, we affirm.[5]

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., dissent.

---

5. To hold otherwise is to hold Kellogg's land hostage for the benefit of the Hoven School District for no reason other than because the district says so. If, on these facts, a circuit court's finding of an abuse of discretion is not affirmed, then SDCL 1–26–36(6) is effectively repealed and there is no longer any appeal from a procedurally correct school board decision on a minor boundary change, regardless of how patently unreasonable or unfair it is.

## APPENDIX

MILLER, Chief Justice (dissenting).

I generally agree with Justice Henderson's thesis that the trial court and majority have misconstrued or misapplied the settled scope of review in this case. It sets a dangerous precedent and invites improper future ad hoc consideration of appeals in these cases.

This court must and should determine whether the *school board,* rather than the trial court, was clearly erroneous or abused its discretion. Under our settled law: (1) school boards are legislatively created entities and, thus, are entitled to such consideration under the doctrine of separation of powers, *see Strain* and *Moran* cited in the majority and Henderson dissent; (2) deference to school boards is compelled by SDCL 13-8-39, *see also Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist. Etc.,* 265 N.W.2d 262, 265-66 (S.D.1978); and (3) a circuit court's findings of fact and conclusions of law must be restricted to the *legality* of a school board's decision. *Strain,* etc.

In making a determination of whether the Board's decision is supportable under SDCL 1-26-36, the circuit court (and this court on appeal) must ascertain whether there was substantial evidence *to support* the Board's decision. *Moran* and *Busker v. Board of Ed. of Elk Point,* 295 N.W.2d 1 (S.D.1980). There is a strong presumption that the Board's decision was made in good faith. *Busker* and *Moran, supra.*

As Justice Henderson's dissent points out, the trial court did not rule on the legality of the Board's decision, but rather substituted its judgment consistent with its determination of the most appropriate final result. It is easy to see how this occurred since all natural sympathies lie with the Kelloggs' position. I personally believe that the Kellogg family belongs in the Gettysburg School District. However, the personal sentiments of judicial officers in these matters are immaterial and should not be considered. (Were I permitted by law to substitute my opinion for that of the Board, I would surely do so in this case—

the persuasive writing of the majority opinion clearly articulates many factual reasons justifying the boundary change). I fear that the circuit court and majority have been unable to exercise such judicial restraint. Rather, having concluded that the boundary change should have been allowed, they ignore or sidestep the settled law of this state in favor of a result they prefer.

I, like Justice Henderson, would reverse and remand for reconsideration on the proper scope of review.

HENDERSON, Justice (dissenting).

As the trial court did not give proper deference to the school board's decision, I would reverse the trial court. Therefore, I respectfully dissent to this opinion.

An appeal from a school board's decision is not a trial de novo in the true sense of the word. *Moran,* at 595, 598. The judiciary is forbidden from invading the school board's decision, unless it is made contrary to law, as the school board is a creature of the State Legislature. Notwithstanding, that is exactly what the trial court did in this case.

Certain basic obligations of citizenship are demanded of all of us. Direct participation by the public in the operation of the school system comes through the service of school patrons on school boards. We should not discourage their participation; rather, we should encourage it. Basically, solving problems in the school districts and between them, though it appears cumbersome, is best served by people who serve on local boards and understand local problems. Therefore, we should, generally, give deference to their judgment.

Under SDCL 13-8-39, it is the school board which has general charge and management of the schools of the district, not the courts. Therefore, per stare decisis in this Court, the courts are bound by the spirit of the law, to give deference to the decisions of a school board. *See, Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.,* 265 N.W.2d 262, 265-66 (S.D.1978).*

---

* Had the transfer been approved, the real estate tax income to the Hoven School District would

Here, the trial court was required to ascertain, under a limited de novo hearing, if there was substantial evidence to support the school board's decision. *Busker v. Bd. of Ed. of Elk Point*, 295 N.W.2d 1 (S.D. 1980). In my opinion, the Hoven School District did have substantial evidence to base its decision.

In one of the conclusions of the trial court, it was expressed that the school district's decision was "unsupported by the evidence." Therein—alone—the trial court should be reversed for using an improper standard of review on the evidence. It substituted its judgment for the school board. In essence, the trial court decided that the school district's decision was "improper," not that it was "illegal."

Here, school board was vested with statutory authority to act and complied with procedural requirements imposed by Law. SDCL 13-46-1.

This is not a teacher discipline case; it involves a boundary decision by a school district. There is substantial evidence to support that decision. Substantial evidence means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. *Busker* at 1, 3, n. 1, (citations omitted). It was not an "illegal" decision, which is the issue at hand. Trial court went beyond its power. Essentially, it second guessed the school district, rather than to determine whether its decision was "legal." *Strain, Dale, Moran.* By no means do I suggest that the school boards of this state have unlimited or unrestrained authority to act on these boundary modification decisions.

Kellogg and Gettysburg School District allot a considerable amount of time in their brief regarding the differences in size of the Gettysburg and Hoven school districts. This thesis is faulty for the difference in size of the two school districts is entirely irrelevant. The Hoven board, in granting or denying a petition, has the responsibility of providing a good education for the students within their district. Geographic size is not a proper method, in itself, of analysis. It is not the Hoven School District's job, nor the job of the courts of this state, to equalize these two districts. This is strictly a legislative function which is not to be accomplished through SDCL 13-6-85.

Furthermore, it appears the Hoven school board did consider the welfare of the Kellogg children, who were the only children residing in the area to be transferred. The board did not believe the Kellogg children would be adversely affected by turning down the boundary change petition. This is noted by Hoven School District's Exhibit No. 1. Since 1983, there have been eleven previous minor boundary changes transferring land from the Hoven district to the Gettysburg district. It is understandable why the Hoven district is concerned about the Kellogg petition, which involves only the Kellogg children. Using its discretionary powers, under the statutory law, under settled law of the state, *see, Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21, 25-26 (S.D.1989), the board agreed the land, to be transferred, was excessive; the board knew, and this was part of the rationale of its decision, that the previous eleven petitions constituted a loss of $2.8 million of assessed evaluation. If the Kellogg petition were granted, the board noted that the allowed assessed evaluation would represent one-third of the total of the previous eleven petitions. It is obvious that if the Hoven board approved eleven other petitions that it was not opposed to change. But this time it was. This writer notes that the board offered to approve a petition of a one-third lesser amount of the real estate, duly petitioned; however, Kellogg refused to reduce the amount of real estate. Kellogg wants all or nothing at all. He wanted to dictate the discretionary power of the Hoven board. Gettysburg School District backed him up. Land was included which was not owned by Kellogg; and far more land was included than was necessary to connect the Gettysburg District to Kellogg's residence where his children live. There can be no doubt that the statutory scheme and settled law

be reduced by approximately $7,500; yet, it is now costing the Hoven School District about

$10,800 in tuition and transportation to educate the Kellogg children.

of this state is that a school board has some discretion to either grant or deny a minor boundary petition. Were it not so, SDCL 13–6–85 would not require that the petition be approved by the school board. Because the Hoven board was paying tuition and mileage for the Kellogg children to attend the Gettysburg school, it also knew there had been no problems assigning these children to the Gettysburg school. Put another way, the educational welfare of the Kellogg children was taken into account. Surely this Board had the additional responsibility of considering the welfare of the other school children in its district.

Judgment of the trial court should be reversed and the case remanded for a determination limited to the legality of the Board's action. In my opinion, the composed majority opinion has struck a severe blow to the integrity of the decisions of school boards in this state. A trial in the circuit court is a *limited* de novo proceeding. Majority decision opens up the proceeding in the circuit court to a wide-open de novo hearing. Our scope of review should respect the doctrine of separation of powers. Deference to the school board's decision is mandated by the Legislature in SDCL 13–8–39. Thus, *the circuit court's findings of fact and conclusions of law must be restricted to the legality of the school board's decision. Strain, supra; see also, Dale, supra* at 116 (Henderson, J., concurring in part, dissenting in part). Trial court was clearly erroneous in its findings and created conclusions of law, which were mistakes of law, in determining there was not substantial evidence upon which the Board made its decision and that board acted arbitrarily and capriciously or abused its discretion.