Nancy **IVERSEN**, Appellant,

v.

**WALL BOARD OF EDUCATION,**
Appellee.

**No. 18152.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 31, 1993.

Decided Sept. 14, 1994.

Linda Lea M. Viken, Viken, Viken, Pechota, Leach & Dewell, Rapid City, for appellant.

J. Crisman Palmer, Gunderson, Palmer, Goodsell & Nelson, Rapid City, for appellee.

BOGUE, Circuit Judge.

Nancy Iversen appeals from a circuit court judgment affirming portions of the decision of the Department of Labor which allowed the inclusion of unfavorable evaluations in her employment file. We affirm.

## FACTS

At the time this matter arose in 1991, Nancy Iversen (Iversen) had taught French and English with the Wall School District (District) for the last ten years of her twenty year teaching career. At the beginning of the 1990–1991 school year, District hired Gale Patterson (Patterson) as principal for the high school. Pursuant to SDCL 13–43–26, District had adopted a policy for the evaluation of its professional staff, which required Patterson to conduct two formal observations and evaluate each teacher under continuing contract at least once during the school year.

In April 1991, Patterson conducted his second observation of Iversen. The observation was unannounced. Following this observation, Patterson completed a formal evaluation instrument on which he listed that Iversen needed improvement in four areas. Iversen disagreed with this evaluation and entered a demurral statement in her personnel file, claiming that Patterson did not understand the teaching method she was using that day and that he had failed to hold a pre-observation conference as required by District policy.

After an attempt at informal resolution, Iversen filed a formal grievance which in-

cluded an allegation that Patterson had also violated policy by allowing personal bias and the complaints of unidentified parents and students to influence his evaluation. Following a denial of relief in the local review process, Iversen's grievance was heard by the Department of Labor (Department). Department found that Patterson had failed to institute a written plan of assistance for the unsatisfactory performance ratings on Iversen's evaluation and ordered remedial measures. As to all the remaining issues, Department ruled against Iversen.

Iversen appealed to the circuit court. The court concluded that school board policy required that District provide a teacher with an opportunity to respond to public complaints. Therefore, it ordered the portions of Iversen's evaluation record based upon parental, student and staff complaints be expunged. In all other respects, the court affirmed Department's decision. On appeal to this Court, Iversen raises three issues.

1. Whether the "abuse of discretion" standard applies when reviewing allegations that a school board has violated its policies.

2. Whether the Department erred in determining that the principal's subjective impressions were properly included in Iversen's evaluation and did not constitute a violation of the Wall School District policy.

3. Whether the remedies granted by Department and the circuit court constitute an abuse of discretion.

## DECISION

When reviewing questions of fact on appeal, this Court defers to the fact finder and will not overturn its decision unless clearly erroneous. *Permann v. Dept. of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113, 115 (S.D.1987). However, when evaluating questions of law, the conclusions of both a circuit court and an administrative agency are fully reviewable. *Wessington Springs Educ. Assn' v. Wessington Springs School District,* 467 N.W.2d 101, 103 (S.D.1991). In reviewing appeals arising from the decisions of administrative agencies, the scope and standard of judicial review are contained in SDCL 1–26–36. This section provides:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion....

This section presents problems regarding which of these standards apply to which of the items being reviewed, i.e. decisions, findings, inferences or conclusions. *Permann,* 411 N.W.2d at 115. Here we are asked to examine a specific standard, "abuse of discretion," and determine both its applicability and its specific application.

Since this appeal from the circuit court was originally before Department as an appeal of a grievance from the Wall School Board (Board) pursuant to SDCL 3–18–1.1, we must undertake a three tier review. Although school boards are technically quasi legislative creatures, when exercising administrative functions, their decisions are also subject to review under SDCL 1–26–36. *Kellogg v. Hoven School Dist.,* 479 N.W.2d 147, 149 (S.D.1991). Our inquiry into the decision of a school board is limited to determining its legality. *Maasjo v. McLaughlin School Dist. #15–2,* 489 N.W.2d 618, 621 (S.D.1992). First, we determine whether the Board had the authority to make its decision. Then we examine whether the Board acted unreasonably or arbitrarily or whether the Board "manifestly abused its discretion." *Id.*

In concluding that the "abuse of discretion" standard did not apply to this matter, Department distinguished Iversen's

grievance over an alleged violation of District policy from appeals which arise from the nonrenewal of a teaching contract. Department cites its prior decision in Fisher v. Sioux Falls School Dist., HF # 14G, 1989/90 in support of this conclusion. However, this distinction is without merit.*

All of the policies of a school board have the force of law, and thus, a board must comply with its own rules. *Nordhagen v. Hot Springs School District,* 474 N.W.2d 510, 512 (S.D.1991). A school board must follow its policies, whether they deal with the evaluation of teachers or the decision to continue employment. The drafting of policies covering both matters is statutorily mandated. *See* SDCL 13–43–26; SDCL 9 13–43–9.1 et seq. In addition, in order to determine an issue on administrative appeal, this Court must scrutinize the conclusions of each decision maker in the chain of appeal. *Application of Northwestern Bell Tel. Company,* 382 N.W.2d 413, 415 (S.D.1986). Thus, the same standard of review must be applied to each.

The record reveals that both the circuit court and the Department examined the Board's decision on Patterson's authority to act and his adherence to the mandates of the District's evaluation policy. Furthermore, the court made frequent reference to Patterson's discretion in determining which of the items to expunge from Iversen's evaluation. Although they incorrectly concluded that review for an "abuse of discretion" was inappropriate, both the Department and the circuit court applied this standard in their respective scrutiny of the Board's decision and the principal's conduct. Since this Court has consistently reviewed the decisions of a school board for "abuse of discretion," it is the proper standard when reviewing whether a school board has violated one of its policies.

While having determined that "abuse of discretion" is appropriate to the review in this situation, there has been confusion regarding the specific application of this standard in the past. This is partially due to semantic confusion.

Abuse of discretion concerns itself with two aspects of a decision maker's choice: (1) whether there is authority for making the decision; and (2) whether the decision is justified under the facts as determined, i.e. is not arbitrary or capricious. An abuse of discretion refers to a discretion "exercised to an end or purpose not justified by, and clearly against reason and evidence," which is part two of the abuse standard. *Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D.1991). SDCL 1–26–36(6) lists the standard of review disjunctively, as either "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The statutory language implies different standards. Actually, "abuse of discretion" covers all the items joined by "or" in subsection 6.

Decisions which are "clearly unwarranted exercise of discretion" constitute an abuse of authority. Decisions which are "arbitrary or capricious" are clearly not justified under the existing facts and circumstances.

Both tests, one the legal, or whether there is authority, and second, the factual, or whether the circumstances justify the decision, must be viewed. As the Court has stated in regard to judicial discretion, the appropriate test is "whether we believe a judicial mind, in view of the law and the *circumstances,* could reasonably have reached that conclusion." *Dacy,* 471 N.W.2d at 580 (emphasis added).

The legal aspect is the authority under which a decision maker acts, whether provided by statute, administrative rule, or

---

* A wide variety of school board decisions, other than nonrenewal issues, are reviewed under an abuse of discretion standard. *See Kellogg,* 479 N.W.2d at 147 (minor boundary change); *Maasjo,* 489 N.W.2d at 621 (termination of Superintendent's contract); *Collins v. Wakonda Indep. School Dist.,* 252 N.W.2d 646 (S.D.1977) (method of offering teaching contract); *Lantz v. Chamberlain Ind. School Dist. # 1,* 254 N.W.2d 155 (S.D.1977) (reassignment of students). In addition, in *Mortweet v. Ethan Board of Educ.,* 241 N.W.2d 580, 582 (S.D.1976), Davison County, we refused to differentiate administrative functions of a school board in regard to the applicable standard of review under SDCL 13–46–6, which provides for a trial de novo by circuit courts in appeals of school matters.

policy. Decision and actions exceeding the bounds of authority constitute an abuse of discretion. Similarly, inaction or indecision, when one is required to perform, is an abuse of discretion. Questions involving authority require no deference to the decision maker, and are freely reviewable by this Court.

The factual aspect of abuse of discretion is more problematic. On review, each decision should be presumed to have been made within that broad range of discretion which cannot be better determined by the reviewing court. This is true whether the decision maker is a circuit court, administrative agency, or school board. This Court should not substitute its judgment when it has not had the opportunity to hear or see the evidence and determine credibility or the weight to be given to different evidence. However, decisions which are not supported by evidence and are arbitrarily or capriciously made or are clearly unreasonable in light of the evidence, constitute an abuse of discretion.

This Court must be wary not to retry a case and make new judgments based upon a cold record. For this Court to overturn a lower court's determination, the record must show an "abuse" of discretion, not merely one which might have been made differently if done so as the initial fact finder. In order to revise the lower decision, this Court must find that clearly there is abuse based upon a lack of or failure to exercise authority or that the circumstances and facts clearly cannot support the decision and is thus arbitrary and capricious. Each case will present different problems for determination, based upon the unique facts therein.

Here, District had implemented a comprehensive evaluation policy pursuant to SDCL 13-43-26. The policy provided the authority for Patterson's evaluation of Iversen. Patterson conducted the required number of observations and conferences, although he combined the first post- with the second pre-observation conferences. This combination was not found to be against policy by the Board, the Department or the circuit court. His evaluation was made from the only evidence available, his impression of the teacher and the classroom. In fact, the policy clearly contemplated that this would be the situation by stating "[i]t is the Board's philosophy that any evaluation, even though it stems from factual evidence, in the final analysis must be subjective." Thus, Patterson did not exceed his authority, violate the policy or fail to act when directed to act. In addition, the Board was within its authority in affirming his actions.

Factually, Iversen claims that Patterson's subjective opinions were not based on verifiable evidence, and therefore, could not properly form the basis for his evaluation under District policy. In addition, she asserts that Patterson misunderstood that she was "modeling" a poetry reading for her students the day of his observation. This resulted in his appraisal that she needed to improve her ability to elicit student responses. Iversen also claims that Patterson was inexperienced with the evaluation instrument.

Although Patterson was relatively new to the Wall school system, the Board determined that his education and experience qualified him for the position of principal, including the duty to evaluate staff. Neither the Department nor the circuit court found evidence that Patterson acted in bad faith or through personal bias. Iversen also argues that her prior favorable evaluations support the conclusion that Patterson abused his discretion by giving her unfavorable ratings. One need only examine the corollary to this proposition to see that it does not withstand scrutiny. If it is not possible to give a poor performance after a string of good performances, then it would also be impossible to give a good performance after a string of poor performances. The purpose of any evaluation is to monitor changes in performance and make improvements where necessary.

It is understandable that an experienced teacher would be unhappy and disagree with an unfavorable evaluation. However, the evaluation policy provides a number of remedies to counteract any effect of an unfavorable conclusion. In fact, Iversen chose to include a demurral statement in her file to explain her position and balance Patterson's assessment.

Based upon the facts as found by the Department and circuit court, this Court finds nothing to indicate that either Patterson or the Board acted arbitrarily, capriciously or unreasonably by including the subjective evaluations in Iversen's file. Thus, the decision of the circuit court as to this issue is affirmed.

Iversen's final contention is that both the Department and the circuit court abused their discretion in fashioning remedies for the violations of policy which each found to have occurred. Department found that the evaluation policy mandated a written plan of assistance for any performance rated as "needs improvement." Since this was not done, Department ordered District to comply. Iversen claims that this only added insult to injury, and actually made her file look worse. However, the requirement of a written plan of assistance is to benefit a teacher by giving an objective criteria to measure improvement. Ordering this remedy is clearly within the authority and discretion of the Department.

Therefore the decision of the circuit court is affirmed.

MILLER, C.J., and SABERS, J., concur in result.

WUEST and AMUNDSON, JJ., dissent.

BOGUE, Circuit Judge, for HENDERSON, Retired Justice, who at the time this action was submitted to the Court, was a member of the Court.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (concurring in result).

I vote to affirm the circuit court because Iversen failed to establish a violation of SDCL 1–26–36 in this appeal.

I would rather vote to affirm and expedite this case based on settled South Dakota Law under SDCL 15–26A–87.1(A)(1). It seems to me that this opinion raises more questions and problems than it resolves. There are times when we should simply decide the case

and leave the exposition of the law to someone else. This appears to be one of those cases and one of those times.

MILLER, C.J., joins this special writing.

WUEST, Justice (dissenting).

The purpose of teacher evaluation statutes is to provide feedback to teachers "so that they can attempt to improve themselves[.]" *Fries v. Wessington Sch. Dist. No. 2–4*, 307 N.W.2d 875, 879 (S.D.1981). As noted in the majority opinion, "once a school board has adopted a rule or regulation, such as with teacher evaluations, it has the force of law." *Schaub v. Chamberlain Bd. of Educ.*, 339 N.W.2d 307, 310 (S.D.1983) (citing *Dale v. Board of Educ., Lemmon Ind. Sch. Dist. 52–2*, 316 N.W.2d 108, 113 (S.D.1982); *Schnabel v. Alcester Sch. Dist. No. 61–1*, 295 N.W.2d 340, 341 (S.D.1980)). The result reached by the circuit court in this case and affirmed by the majority opinion allows a school board to violate its own policies and use the resulting evaluations for purposes other than providing feedback for teacher improvement.

The record shows that principal Patterson graduated from Wall High School, and later taught at the Wall High School for eight years. After serving as a principal in Philip, South Dakota for three years, he returned to Wall as high school principal in 1990. Patterson's sister-in-law—his brother's wife (referred to only as "Mrs. Patterson")—teaches at the high school.[1] According to Iversen's testimony, Mrs. Patterson was a part-time teacher of home economics and English for many years. Iversen testified that Mrs. Patterson was recently made a full-time teacher, stating:

> [N]ow [Mrs. Patterson] is teaching a full load of English classes, teaching classes that I have taught for years. And for the second semester of this year I've only been assigned two class[es]. And to me it looks like my classes were taken from me and given to [Mrs. Patterson] so that she would be a full-time teacher for sure and possibly I would be either fired or reduced to half time.

---

1. Principal Patterson's wife also teaches fourth grade in the Wall school district.

Iversen was assigned to teach upper level English electives, for which few students registered for the 1991–92 school year.[2] The Wall school district's staff reduction policy allows various criteria to be considered in determining which professional staff could be laid off, including *evaluation records.*

The circuit court announced its findings and conclusions from the bench. The trial judge found that the Department was in error and that it was "a clear violation of the [public complaint] policy" and that "anonymous or unsubstantiated complaints" could not be considered in the evaluation process. Further, any comments or consideration of Iversen's use of sick leave were not to be considered in the evaluation process. Thus, the circuit court ordered that any comments on the evaluation that could be construed to have originated from the anonymous complaints or sick leave concerns must be expunged. This was proper.

A review of the record shows that Patterson's first observation of Iversen's teaching took place on December 4, 1990. Patterson held a preobservation conference wherein discussion took place regarding specific items to be observed. Patterson observed a French class for 46 minutes. The written observation record is detailed. In his comments section Patterson states:

Time on task was good.

*All the students were involved in the class.*

The class moved from one activity to another without delay.

Repetition is a good technique for students to remember the work.

I did not hear a review of information.

No objectives were given for the class.

(Emphasis added.) Although Patterson states that the December postobservation conference also served as the preobservation conference for the subsequent (second) observation, the record does not indicate (other than the comments shown above) what he would be looking for in the next observation. The second observation took place approxi-

mately four and one-half months later, on April 24, 1991. Patterson attended the class for 34 minutes, was not present for the first 15 minutes of the class and left before the end of the period. Patterson's postobservation notes state in part that:

Student involvement was limited to only a few. The class is teacher dominated in that the teacher does most of the talking. At least one student did not join in at all.

In the evaluation instrument, Patterson states that, "There was not a lot of student participation in the class*es* that I observed" and marked Iversen as "needs improvement" on Item II(C), "Stimulates thought and interest." Clearly, this conflicts with Patterson's notes regarding the December observation that "All the students were involved in the class." Additionally, in spite of the fact that Patterson admittedly had no idea what Iversen was trying to accomplish in the April 24 class, she was marked as "needs improvement" on Items III(D) and (E)—"Utilizes different instruction approaches" and "Designs and uses appropriate questions to elicit student responses." Patterson again commented that the class was "teacher dominated."

The circuit court criticized principal Patterson's evaluation method wherein Patterson combined the December postobservation conference with the subsequent preobservation conference. The court stated:

There's a weakness in the method he selected. It doesn't go to the validity, it just goes to the weight or credibility or the value you're going to place on the evaluator who comes in, not knowing what he's coming into and what is trying to be accomplished.... When he didn't know what he was walking into what she was trying to accomplish, he comes up with this teacher domination theory and so on. He doesn't have an understanding of what she's trying to accomplish.

Nevertheless, the circuit court held that Patterson could write down his observations—in spite of the fact that the principal/evaluator

---

**2.** Although the record does not indicate the enrollment at Wall High School, we can take judicial notice that the 1992–93 enrollment at the school was 90 students, with 18 graduating sen-

iors. *Executive Summary: 1993 South Dakota School Report Card Program,* South Dakota Dep't of Educ. (1993).

had no idea or understanding of what the teacher was trying to accomplish in that class period—and place these critical comments in the teacher's permanent evaluation file.

This result makes a mockery of teacher evaluation systems, and ignores our stated purposes of teacher evaluation. No teacher can "attempt to improve" herself or himself when the evaluative comments and "feed-back" are based on a complete lack of under-standing of what was to be accomplished during the class period. *Fries,* 307 N.W.2d at 879. The result reached in this opinion allows a school administrator to observe 34 minutes of a class period out of a 175–day school year, reach invalid conclusions, and then place those criticisms in a teacher's file—to subsequently be used for whatever purpose the administrator or school board desires. The legislature specifically mandat-ed that school boards adopt an "official evalu-ation policy" so that these tools could be used to encourage professional growth. SDCL 13–43–26. Professional growth of teachers in this state will not result if evaluations can be carried out in the manner shown herein. Thus, I respectfully dissent.

AMUNDSON, J., joins this dissent.