COLMAN–EGAN SCHOOL DISTRICT NO. 50–5, Appellant,

v.

Jeffrey D. JONES and Amy L. Jones, Appellees,

and

John Bonaiuto, Secretary of South Dakota Department of Education and Cultural Affairs.

No. 18516.

Supreme Court of South Dakota.

Considered on Briefs March 24, 1994.

Decided Aug. 17, 1994.

J.B. Lammers of Lammers, Lammers, Kleibacher & Parent, Madison, for appellant.

John A. Shaeffer, Flandreau, for appellee.

PER CURIAM.

Colman–Egan School District No. 50–5 (the District) appeals the reversal of its disapproval of the petition of Jeffrey D. and Amy L. Jones (Jones) for a minor school district boundary change. We reverse.

### FACTS

This case involves the school districts serving the communities of Flandreau, Colman and Egan, South Dakota. In 1990 or 1991, proceedings began to merge the separate

---

Colman and Egan school districts into a single Colman–Egan School District. Within the old Egan School District, were several "islands" of property that could not be made a part of the new Colman–Egan School District due to state rules concerning contiguous property within school districts.[1] Those properties, as well as several other outlying parcels, were written out of the plan for the new Colman–Egan School District. As a result, a little over five million dollars worth of property that formerly belonged to the Egan School District was not included in the plan for the new Colman–Egan school district. The majority of that property ended up in the nearby Flandreau School District.

In March 1991, an election was conducted to approve the plan for formation of the Colman–Egan School District. Preparatory to the election, many public meetings were held to discuss the formation of the new school district and members of the public were given an opportunity to provide their input or to make any requests they might have in regard to the formation. The election was ultimately successful and the new Colman–Egan School District came into being on July 1, 1991.

Jones resided for approximately eleven years in Flandreau. During that time, Jones' ten year old child attended the Flandreau School for all six years of his education (i.e., through the fifth grade and, at the time of this decision, presumably the sixth grade). In December 1991, Jones purchased a residence approximately four and one-half miles outside of the Flandreau city limits where they moved in January 1992. At the time they purchased the property, Jones were aware of the recent school district reorganization and were also aware the property they had purchased was in the newly reorganized Colman–Egan School District. Nevertheless, they assumed and believed there was a good possibility they would be able to have their property transferred from the Colman–Egan School District into the Flandreau School District.

In January 1992, Jones filed a petition for a minor school district boundary change with the Colman–Egan Board of Education (Board). Jones' petition sought to transfer their new property from the Colman–Egan School District into the Flandreau School District. A hearing on their petition was conducted during a regular meeting of the District's Board on February 13, 1992. During the hearing, Jones were afforded a full and fair opportunity to present their arguments and evidence in support of their requested minor boundary change. The Board unanimously voted to disapprove the petition. A formal letter informing Jones of the reasons for the disapproval was issued by the Board.

█ Jones appealed the Board's disapproval to the State Secretary of Education and Cultural Affairs. A hearing on the appeal was conducted by the Secretary's representative.[2] The Secretary's representative entered his findings of fact, conclusions of law and order determining the Colman–Egan School Board acted arbitrarily and capriciously and also erred as a matter of law in disapproving Jones' petition. Therefore, the representative's order reversed the Board's disapproval of the petition.

The District appealed the representative's order to the circuit court. Based upon its review of the pleadings, the transcript of the hearing before the Secretary's representative and the representative's decision, the circuit court entered an order adopting the representative's findings of fact and conclusions of law and affirming his decision on September 13, 1993. The District now appeals to this Court.

## ISSUE

WAS THE BOARD'S DISAPPROVAL OF JONES' REQUEST FOR A MINOR SCHOOL DISTRICT BOUNDARY CHANGE CLEARLY ERRONEOUS, AR-

---

1. Requirements concerning contiguous property in school districts are not at issue in this appeal and, therefore, the testimony concerning this consideration is presumed to be accurate for purposes of this decision.

2. Minor boundary change appeals to the Secretary of Education may be heard by the Secretary or *his representative*. SDCL 13-6-85.

BITRARY, CAPRICIOUS, OR AN ABUSE OF DISCRETION?

In denying Jones' boundary change petition, the Board made no extensive findings of fact or conclusions of law. The only written records of the Board's deliberations are a few sentences from the minutes of its meetings on February 13 and 20, 1992 and several brief paragraphs in its formal letter of disapproval dated February 21, 1992. However, an evidentiary hearing was conducted before the Board and Jones were given a full and fair opportunity to present their arguments and evidence in support of their petition for the boundary change. An extensive hearing on Jones' petition was also conducted by the representative of the Secretary of Education. The hearing was tape recorded and later transcribed, witnesses were sworn and evidentiary objections were made. The representative entered findings of fact and conclusions of law.

■ The entire record was reviewed by the circuit court in considering the legality of the Board's decision. Given this extensive record and the lack of additional de novo testimony before the circuit court, the following standard of review is applicable in this case:

[T]he scope of review [in the instant case] is limited to determining the legality of the school board's decision. *Moran v. Rapid City Area Sch. Dist.*, 281 N.W.2d 595 (S.D. 1979).

' "[T]he trial de novo required by SDCL 13–46–6 permits an independent inquiry into the facts, but only for the purpose of passing on the legality of board's decision." ' "The circuit court must determine (1) whether the board possessed the administrative power to make the decision (which is not in issue here), and (2) whether the board acted unreasonably or arbitrarily, or whether the board manifestly abused its discretion."

\*     \*     \*     \*     \*     \*

"In determining whether the school board's decision was arbitrary, capricious or an abuse of discretion, the circuit court must ascertain *whether there is substantial evidence to support the school board's deci-*

sion." *Moran*, 281 N.W.2d at 599. (emphasis added). Substantial evidence means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We must determine whether Board was clearly erroneous by examining the evidence supporting its decision.

*Oldham–Ramona School Dist. v. Ust*, 502 N.W.2d 574, 580–81 (S.D.1993) (quoting *Maasjo v. McLaughlin School Dist. 15–2*, 489 N.W.2d 618, 620–21 (S.D.1992) (citations omitted).

Having defined the applicable standard of review, we turn our analysis to the board's decision on [Jones'] petition. Substantive factors we have previously looked to in evaluating decisions concerning minor boundary changes include: (1) whether the petitioners are more closely aligned to the economic, social and religious life of the community into which they are being transferred; (2) whether there is bus service to the residence; (3) whether the district line which places their property in the current district was drawn in an arbitrary fashion; (4) whether petitioner's child has special needs best met in the district petitioners are attempting to join; and (5) whether the petitioners live closer to the school district they are joining as opposed to the district they are leaving.

*Oldham–Ramona*, 502 N.W.2d at 581 (citations omitted).

Here, the Board disapproved Jones' petition for a boundary change for the following reasons:

Reasons for the board action were based on the potential loss of taxable valuation and tax revenue to the district as well as effect on State Aid. The applicant indicated intention of improving the property which would increase the valuation loss.

The applicant recently purchased the property with full knowledge of its location in the Colman–Egan School District. The intent of the board's action is to stabilize the tax base and the boundaries of the newly formed school district.

The potential for equal education and extra curricular opportunity exists in the Col-

man–Egan district as compared to surrounding districts and the district offers bus service to the patrons.

The student involved is in elementary school at an age which a transition to a new school could be made without extreme hardship.

As is apparent, the Board did place heavy emphasis on economic considerations in denying Jones' petition. However, as this Court recently held in *Oldham–Ramona, supra*, "we have never held that a school district's economic interests are irrelevant in considering a boundary change petition." *Id.* at 582. The Colman–Egan School Board's concern with economic factors and stabilization of its tax base and school district boundaries is particularly understandable in view of its recent reorganization and the substantial amount of property lost by the old Egan School District in the reorganization process.

Moreover, the economic factors were not the sole factors considered by the Board in denying Jones' petition. The board found no educational hardship would be imposed in denial of the boundary change because equal educational and extra-curricular opportunities existed in the Flandreau and Colman–Egan schools. Jones have never disputed that determination and have never presented evidence that their child has any special needs that are better met in the Flandreau School District. Although Jones did raise concerns regarding their child's ability to adjust to a new school system, that is a concern for any parent who has made a move into a new school district and an adjustment survived by many, many students in today's mobile society. There is no record evidence of any particular difficulties that would be suffered by Jones' child in this regard.

The Board also found no mileage hardship would be suffered by Jones in denial of their petition because bus service would be provided to them. Jones' residence is approximately nine and one-half miles further from the Colman school where their child would be attending than from the Flandreau school he is presently attending. Nevertheless, in *Oldham–Ramona, supra*, this Court found that a twelve mile difference in distances between schools was, "not so significant as to result in much longer bus rides." *Id.* at 584. In addition, also as in *Oldham–Ramona*, Jones have raised no particular concerns with the amount of time their child will be required to spend on a bus.

It is apparent from a review of the decision of the Secretary's representative in this case that a substantial part of his concern in reversing the disapproval of Jones' petition was with Jones' significant economic, social and religious ties to the Flandreau community. Mr. Jones is employed in Flandreau, is highly involved in community affairs and the entire family has significant involvement in their church's activities in that community. Nevertheless, as the Board's decision pointed out, Jones purchased their new property with full knowledge of its location in the Colman–Egan School District. Thus, this is not a case like many others before this court where school district reorganization has thrust a family into the position of changing schools but a case where the petitioners voluntarily moved into the new school district with full knowledge that a change in schools would be required unless a minor boundary change could be secured. In short, Jones gambled on the possibility of changing school district boundaries and lost. Thus, it is difficult to place any significant degree of emphasis on the ties Jones might have in Flandreau given their voluntary gamble with those ties.

■ Based upon the foregoing considerations, we hold that the Board's disapproval of Jones' boundary change petition finds substantial support in the record and is not clearly erroneous, arbitrary, capricious or an abuse of discretion. Although Jones' argument places heavy emphasis on this court's decision *Kellogg v. Hoven School District 53–2*, 479 N.W.2d 147 (S.D.1991), they ignore that a different standard of review was applicable in *Kellogg* than in the instant case. As we observed in *Maasjo*, 489 N.W.2d at 620, "[*Kellogg, supra* ] is the appropriate standard of review when there is essentially no record for the circuit court to review." In this instance, as in *Oldham–Ramona, supra*, the circuit court's review was based entirely on the record made before the representative of the Secretary of Education. Therefore, just as in *Oldham–Ramona, supra*, we apply the

standard of review set forth in *Maasjo, supra.*

Giving due deference to the Board's decision in this matter as required by *Maasjo, supra,* we hold that the circuit court's affirmance of the Secretary's reversal of that decision must, itself, be reversed and the boundary change disapproved.

Reversed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.