Unified Judicial System

 

 
 
Formatting courtesy of the State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501 


OELRICHS SCHOOL DISTRICT 23-3,
Appellee,
v.
JOHN SIDES, CAROL SIDES and HELEN SIDES,
Appellants.
[1997 SD 55, __ NW2d __] 
South Dakota Supreme Court
Appeal from the Seventh Judicial Circuit, Fall River County, SD
Hon. Merton B. Tice Jr., Judge
#19636 â Affirmed
Dwight A. Gubbrud, Bennett, Main, Frederickson & Bailey, Belle Fourche, SD
Attorneys for Appellee.
John J. Delaney, Estes, Porter & Delaney, Rapid City, SD
Attorneys for Appellants.
Considered on Briefs Mar 25, 1997; Opinion Filed May 14, 1997
 GILBERTSON, Justice.
 [Â¶1] John, Carol and Helen Sides appeal the disapproval of their petitions for a minor school boundary change. We affirm.

FACTS AND PROCEDURAL HISTORY
 [Â¶2] John Sides, his wife Carol and his mother Helen Sides all filed separate petitions for a minor boundary change transferring their property from the Oelrichs School District to the Hot Springs School District. All three petitioners live together on a Fall River County ranch, and their address is Smithwick, South Dakota. They represent 100 percent of the voters within the proposed boundary change area. There is no question that the amount of land involved implicates the minor boundary change provision of statute. {fn1}  The ranch is not coterminous with both school districts, but is separated from the school district line only by federal grassland and state land, all of which is leased by the Sides. {fn2} 
 [Â¶3] The Sides children, Amanda (8th grade), Jack (6th grade) and Shauna (3rd grade) attended the Smithwick school, which is in the Oelrichs District, until it closed at the end of the 1994-95 school year. The Sides children were the only students at Smithwick for part of the schoolâs final year. It is the closing of the Smithwick school which appears to have prompted the petitions for boundary change. The Sides want their children to attend school in the Hot Springs District.
 [Â¶4] The Sidesâ petitions were approved by the Hot Springs District, but unanimously disapproved by the Oelrichs District. The Sides appealed the Oelrichs School Boardâs decision to the Secretary of Education and Cultural Affairs as provided by SDCL 13-6-85. After an evidentiary hearing before a hearing examiner, {fn3}  the Secretary of Education reversed the school board and approved the petitions. The Sides children were enrolled in the Hot Springs School District, and are presently attending school within that district.
 [Â¶5] The Oelrichs School District appealed to the circuit court, which held a full evidentiary hearing. {fn4}  During the hearing, the court required counsel to clearly identify which testimony had been presented to the school board and which testimony was being presented for the first time to the court. At the conclusion of the hearing, the judge ruled from the bench that considering the evidence both ways, the school board decision must be upheld. The Sides appeal. {fn5} 

LEGAL ANALYSIS
 [Â¶6] Whether the Oelrichâs School Board decision to disapprove the Sideâs minor boundary change petitions was clearly erroneous, arbitrary, capricious or an abuse of discretion?
 [Â¶7] A school boardâs decision on a minor boundary petition has two avenues of appeal: directly to the circuit court, or to the Secretary of Education. SDCL 13-6-85. The grant of decision-making power to the Secretary is designed to encourage settlement of boundary disputes without resort to court action; however, the decision of the Secretary nonetheless is subject to appeal to the circuit court. The Secretaryâs decision in such appeals is to be given no deference by the reviewing court. SDCL 13-6-85; Oldham-Ramona Sch. Dist. v. Ust, 502 NW2d 574, 579 (SD 1993).
 [Â¶8] The circuit court reviews the decision of the school board de novo. SDCL 13-46-6. It is not a trial de novo in the truest sense of the term, and the court is not permitted to determine the propriety of the boardâs decision. Strain v. Rapid City Sch. Bd., 447 NW2d 332, 338 (SD 1989).

School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law.
Moran v. Rapid City Area Sch. Dist., 281 NW2d 595, 598 (SD 1979).
 [Â¶9] We are not bound by a presumption that the circuit court decided correctly. The proper scope of review for this court is the same as that of the circuit court. Strain, 447 NW2d at 338.

[T]he trial de novo required by SDCL 13-46-6 permits an independent inquiry into the facts, but only for the purpose of passing on the legality of boardâs decision. The circuit court must determine (1) whether the board possessed the administrative power to make the decision ... , and (2) whether the board acted unreasonably or arbitrarily, or whether the board manifestly abused its discretion.
Colman-Egan Sch. Dist. No. 50-5 v. Jones, 520 NW2d 890, 892 (SD 1994) (citing Moran, 281 NW2d at 599).
 [Â¶10] In the instant case, the school boardâs administrative power to make the decision is not at issue; however, in deciding whether the boardâs decision was arbitrary, capricious or an abuse of discretion, the circuit court is required to determine only whether there was substantial evidence to support the school boardâs decision. Oldham-Ramona, 502 NW2d at 580-81; it does not need to justify the school boardâs decision by a preponderance of the evidence received. Id. at 579. Substantial evidence has been defined as "such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 581.
 [Â¶11] Keeping in mind this very narrow scope of review, this Court previously has looked to five substantive factors in reviewing minor boundary change decisions:

1. Whether the petitioners are more closely aligned to the economic, social and religious life of the community into which they are being transferred?
2. Whether there is bus service to the residence?
3. Whether the district line which places their property in the current district was drawn in an arbitrary fashion?
4. Whether petitionerâs child has special needs best met in the District petitioners are attempting to join?
5. Whether the petitioners live closer to the school district they are joining as opposed to the district they are leaving?
Colman-Egan, 520 NW2d at 892; Oldham-Ramona, 502 NW2d at 581.
 [Â¶12] These factors were included in a packet of information provided to the Oelrichs School Board by its attorney prior to the decision of the board on the Sidesâ petitions. The school board, in disapproving the petitions, gave the following reasons in the unapproved minutes of its March 13, 1995 meeting:

The John Sidesâ petition to move approximately 52 sections of deeded and Buffalo Gap National Grasslands from the Oelrichs School District to the Hot Springs School District was discussed. Carol Sides presented concerns in education, competition, sports and social activities at Oelrichs School. Tom White represented the Pioneer Cooperative Grazing District directors who voted to oppose the transfer of land to the Hot Springs School District. Mileage from the Sides home to both Hot Springs (28 miles) and Oelrichs (20 miles0 [sic] was discussed. The education at Oelrichs School is comparable to the education at Hot Springs School. Massive amounts of land would be transferred which would mean a loss to the Oelrichs School in federal monies. A motion was made by Dryden seconded by Trent that in light of the discussion in regards to the Sides Petition, the Oelrichs School District denies the boundary change. Motion carried.
 [Â¶13] The circuit court weighed all five factors in light of the testimony presented before the school board and again in light of the additional testimony presented to the court at its evidentiary hearing. {fn6}  The circuit court found substantial evidence to support the school boardâs decision either way.
 [Â¶14] We consider the five factors reviewed by the circuit court in light of all the evidence presented to it.
 [Â¶15] 1. Whether the petitioners are more closely aligned to the economic, social and religious life of the community into which they are being transferred?
 [Â¶16] The Sides argued that their family is more closely aligned to the Hot Springs community than to the Oelrichs community. They point out that they do their grocery shopping in Hot Springs rather than Oelrichs, and that they use Hot Springs for legal, medical, and government services. If we were to adopt this logic, however, it would appear that no one is closely aligned to the Oelrichs District. As the circuit court found:

[I]t is not unusual for many Oelrichs School District residents to go to Hot Springs for county services, health care, legal services, dental care, accounting services and veterinarian services. In fact, most residents probably leave the Oelrichs School District for these and many other things. Oelrichs is not a county seat. There is not a doctor in Oelrichs. There are no lawyers ... dentist ... accountant ... veterinarian ... bank... government offices in Oelrichs.
 [Â¶17] The Sides claim they have closer ties to the Hot Springs District because that is where they attend church, pick up their mail, have their machinery repaired and where Mr. Sides participates in volunteer firefighting activities. This argument is flawed. While these activities may occur in the Hot Springs District, they actually are conducted at Smithwick, which by the Sidesâ own admission is divided between the two School Districts. In fact, the church the Sides attend in Smithwick is only 120 feet from the Oelrichs School District boundary. We agree with the circuit court on this factor.
 [Â¶18] 2. Whether there is bus service to the residence?
 [Â¶19] The evidence indicates that neither the Oelrichs School District nor the Hot Springs School District will provide bus service to the Sides children from their home. The Sides ranch is a 36-mile round trip to Oelrichs and a 56-mile round trip to Hot Springs. The Hot Springs District does have a bus which would pick the Sides children up at Smithwick, which would require the Sides to drive 21 miles round trip to drop off their children for the bus. The Hot Springs School District provides no reimbursement for this travel. The Oelrichs School District, on the other hand, provides reimbursement for any mileage beyond two and one half miles from the school. The circuit court found that if there was any advantage, it was with Oelrichs, in light of the 44 miles of uncompensated travel per day required by the Hot Springs District.
 [Â¶20] Even though the Sides claim the Hot Springs District bus service is more convenient, takes less time and is on better roads, under the narrow standard of review, this Court finds there was sufficient evidence to show the evidentiary advantage was with the Oelrichs District.
 [Â¶21] 3. Whether the district line which places Sidesâ property in the current district was drawn in an arbitrary fashion?
 [Â¶22] While the boundary of the Oelrichs School District does zigzag, there is no merit to the Sidesâ contention that the property line which places them in the Oelrichs School District is arbitrarily drawn. It was rationally drawn to accommodate the choice of the residents of the former Smithwick School District at the time that District was dissolved. The line which places the Sides in the Oelrichs School District is not where the zigzag in the district occurs; the Sidesâ property is one section north and straight across due east from the existing boundary. The Sidesâ petition, on the other hand, would move that line eight and a half sections south and due east, creating a 32,380 acre "peninsula." It is also ironic that the boundary that the Sides now claim is "arbitrary" was created at their own request when the Smithwick District dissolved. {fn7}  There was substantial evidence for the circuit court to find that the original boundary was not drawn in an arbitrary fashion and to find that the new boundary would be arbitrary.
 [Â¶23] 4. Whether petitionersâ children have special needs best met in the district petitioners are attempting to join?
 [Â¶24] The Sides claim that their children, particularly their oldest daughter, have special needs which are better met by the Hot Springs School District. While the evidence suggests that Amanda is academically and athletically gifted, the Sides have provided no supporting authority for their contention that she has special needs, and the issue is deemed waived. State v. Knoche, 515 NW2d 834, 840 (SD 1994); Corbly v. Matheson, 335 NW2d 347, 348 (SD 1983). {fn8} 
 [Â¶25] 5. Whether the petitioners live closer to the school district they are joining as opposed to the district they are leaving?
 [Â¶26] As previously discussed, the Sides are geographically closer to the Oelrichs School District than to the Hot Springs District.
 [Â¶27] We note that the circuit court, after hearing all the testimony and considering all the evidence, concluded that the primary basis for the Sideâs petition was their personal preference that the children attend school in the Hot Springs District. Personal preference is not a sufficient basis for granting a boundary change petition. See, Oldham-Ramona, Colman-Egan, supra.
 [Â¶28] The Sides additionally argue that the Oelrichs School Board based its decision on erroneous information which estimated the proposed boundary change would cause the school district to annually lose $19,999.07 in real property taxes and federal payments in lieu of taxes. It was later established that the true impact was $11,000. We have previously determined that economic factors, in conjunction with other relevant factors, are a valid consideration by the school board in considering a petition. Oldham-Ramona, 502 NW2d at 582 (emphasis added). Clearly an $11,000 loss in revenue for a school district the size of Oelrichs is no small matter.
 [Â¶29] While the economic loss to the school district may have been an important motivation of the school board, {fn9}  it was not the only factor board members considered. The record shows substantial evidence supporting the other factors, and we hold that the circuit court properly determined that the school board decision disapproving the boundary change was not arbitrary, capricious or an abuse of discretion.
 [Â¶30] We affirm.
 [Â¶31] MILLER, Chief Justice and KONENKAMP, Justice, concurs.
 [Â¶32] SABERS and AMUNDSON, Justices, dissent.
SABERS, Justice (dissenting).
 [Â¶33] It seems senseless for the law to provide three levels of appellate review of school board decisions, especially when the reviewing authoritiesâ hands are tied by such a deferential standard of review. While it may be appropriate to limit the scope of review with regard to the Boardâs non-judicial functions, it is nonsensical to do so when a government entity performs "quasi-judicial" functions; we recently stated exactly that in Fall River County. v. South Dakota Department of Revenue, 1996 SD 106, Â¶Â¶16-17, 552 NW2d 620, 625, a unanimous opinion written by Chief Justice Miller:

In spite of a statute providing for de novo review, we have held that appeals of school board decisions must be reviewed under the more deferential standards contained in SDCL 1-26-36. However, that case law does not apply here because it involved government entities exercising legislative or administrative rather than quasi-judicial functions. Judicial restraint is required when review of legislative or administrative functions is contemplated. However, we cannot discern any constitutional basis for limiting the scope of judicial review when the executive branch exercises quasi-judicial powers.
We are also unwilling to adopt a different standard of review based on the identity of the parties rather than the nature of the authority exercised by the Department. Under the trial court's rationale, BNRR could appeal to the circuit court and invoke the traditional de novo standard of review. Meanwhile, an appeal by a county or school district would be considered by the court under a more deferential standard of review. As a result, decisions that are unfavorable to counties and school districts would be more difficult to overturn on appeal than decisions that are unfavorable to utilities. According such benefits to only one potential party in a dispute is inconsistent with a court's responsibility to be fair and evenhanded.
(Emphasis added) (citations omitted). To continue to employ this standard of "review" stacks the deck in favor of a school board in every case. It is neither fair nor evenhanded and we should stop pretending otherwise.
 [Â¶34] Moreover, it is a farce to pretend the circuit court reviews the Boardâs decision when there really is not one to review. See supra Â¶11 (showing one paragraph of unapproved minutes listing the "reasons" for its "decision"). The majority opinion repeatedly refers to what the circuit court decided and why it reached the decision which it did. Cf. Kellogg v. Hoven School Dist. No. 53-2, 479 NW2d 147, 150 (SD 1991) ("The circuit court found that Board's decision was arbitrary and capricious. That is the decision this court is reviewing, not Board's original decision.") (emphasis in original). If the Legislature continues to permit the Board to make these decisions, which affect substantial rights of petitioners, without any formal procedures, then it is indeed the circuit courtâs decision which is, and should be, reviewed. However, the circuit courtâs review of the Boardâs decision should be made objectively -- not deferentially and not with an eye toward affirming by simply searching for evidence to support the decision. {fn10} 

Ours is a government of laws and not of men. This is a fundamental concept of our form of government. In essence, it means that personal and property rights must be determined according to stated and defined rules of law rather than by the unbridled whim and fancy of administrative officials and agencies.
Dunker v. Brown Cty. Bd. of Educ., 80 SD 193, 206, 121 NW2d 10, 18 (1963) (Hanson, P.J., dissenting) (language subsequently revived in Moran v. Rapid City Area Sch. Dist. No. 51-4, 281 NW2d 595, 599 (SD 1979)).

School boards may be "creatures of the legislature," but when they rule on the petition of a taxpayer to transfer his property to another school district, the circuit court has appellate jurisdiction over the board's decision, SDCL 13-6-85, and the decision may be overturned if it is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." SDCL 1-26-36(6). In other words, the circuit court has the authority to reverse a school board's arbitrary decision even when the board has acted "legally" in the narrow sense of being procedurally correct.
Kellogg, 479 NW2d at 149 (emphasis added).
 [Â¶35] As a practical matter, this decision may make little difference in light of the Legislatureâs decision to adopt an open enrollment policy in South Dakota. See supra note 5. However, this decision perpetuates an unfair standard of review. Additionally, it leaves Sidesâ property tied to a former school district for questionable reasons enunciated by the Board -- the same people who have a vital interest in the outcome. {fn11}  Certainly the Board was performing a quasi-judicial function in this case. See Fall River County, 1996 SD 106 at Â¶15, 552 NW2d at 625:

[The definition of a quasi-judicial function is] one involving judgment and discretion and which may be conferred upon an executive or administrative board as an incident to its duties, and from the exercise of which an appeal can be, and in this state often is, given to the courts.
(Citing Hoyt v. Hughes Cty., 32 SD 117, 125-26, 142 NW 471, 474 (1913) (Whiting, P.J., concurring)).
 [Â¶36] Additionally, it is difficult to conclude the Boardâs decision was anything but arbitrary and capricious when the Boardâs President admitted "[W]e spent, like I say, I thought a long time talking about the reasons -- well, Iâll be honest with you -- to deny the boundary change." Financial motivation on the part of the fact finder or decision maker is unheard of in any other forum. See, e.g., Gibson v. Berryhill, 411 US 564, 579, 93 SCt 1689, 1698, 36 LEd2d 488, 500 (1973) ("It is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes."); Gottschalk v. South Dakota State Real Estate Commân, 264 NW2d 905, 909 (SD 1978) ("This court has recognized that professional board members with a substantial pecuniary interest should not adjudicate the kind of [disciplinary] dispute involved in these proceedings.").

It is one of the mainstays of our system of laws that a state cannot affect a person's personal or property rights except after a hearing before a fair and impartial tribunal. A fair and impartial tribunal requires at least that the trier of fact be disinterested and that he also be free from any form of bias or predisposition regarding the outcome of the case. Not only must the procedures be fair, "the very appearance of complete fairness" must also be present. These principles apply not only to trials, but equally, if not more so, to administrative proceedings.
It is sufficiently clear that those with substantial pecuniary interest in proceedings of this nature should not adjudicate the disputes. The key word in the last sentence is "substantial."
Brown v. State Bd. Of Examârs in Optometry, 263 NW2d 490, 492 (SD 1978) (citations & alterations omitted). As the majority opinion states supra at Â¶27, "Clearly an $11,000 loss in revenue for a School District the size of Oelrichs is no small matter." The standard to be applied is "whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure." Strain v. Rapid City Sch. Bd., 447 NW2d 332, 336 (SD 1989) (citations omitted).
 [Â¶37] We should reverse and remand for a trial de novo in the "truest sense of the term."
 [Â¶38] Justice Amundson joins this dissent.

Footnotes
 fn1. SDCL 13-6-85, which addresses minor boundary changes on petition by voters, states as follows, in part:

A boundary change, affecting not more than two percent of the assessed valuation and not more than two percent of the tax-exempt acreage or other tax-exempt property to be determined at the discretion of the school district from which the area is to be taken, may be made upon an application for a boundary change to the school board of the school district from which the area is to be taken and to the school board of the school district to which the area is to be annexed, in the form of a petition signed by over fifty percent of the voters residing in the area to be transferred by the boundary change.
School district concedes that the Sidesâ petitions involve 1.98 percent of the total assessed valuation of the Oelrichs School District.
 fn2. SDCL 13-6-84.1 provides that in order to request a boundary change, "[t]he boundary of the area proposed to be transferred shall be coterminous at some point with the common boundary of the two school districts. Land owned by the federal, state or local governments ... may be included in the request."
 fn3. SDCL 13-6-85 provides that the hearing may be held by the Secretary "or his representative."
 fn4. The hearing lasted over seven hours on two non-consecutive days and included new testimony from John Sides and Board President Orval Frahm.
 fn5. We take judicial notice that the open enrollment bill, HB 1075, enacted by the 1997 Legislature, may provide some relief to the Sides. However, the law, which amends existing sections of SDCL ch 13-28 and adds SDCL 13-28-40-47, will not take effect until July 1, 1997 and does not become fully implemented for purposes of school enrollment until the 1998-99 school year. Thus, the Sidesâ appeal is not moot.
 fn6. In hearing the appeal de novo, the circuit court properly considered all evidence presented to it in determining whether the school boardâs decision was lawful. See, e.g., Iversen v. Wall Bd. of Educ., 524 NW2d 624 (SD 1994); Oldham-Ramona, supra; Maasjo v. McLaughlin Sch. Dist. No. 15-2, 489 NW2d 618 (SD 1992); Reid v. Huron Bd. of Educ., 449 NW2d 240 (SD 1989); Strain, supra; Schnabel v. Alcester Sch. Dist. No. 61-1, 295 NW2d 340 (SD 1980); Busker v. Board of Educ., 295 NW2d 1 (SD 1980).
 fn7. When John Sides attended the Smithwick school, it was part of the old Smithwick School District. At the time that district dissolved, parents within the Smithwick District were given their preference of the Oelrichs or Hot Springs Districts. Johnâs parents chose the Oelrichs District because the school John attended at Smithwick was part of that District. The exercise of the option by various parents within the Smithwick District resulted in a zigzagging border between the Oelrichs and Hot Springs Districts, even within the town of Smithwick itself.
 fn8. A review of the statutes is suggestive that the term "special needs" deals with students with disabilities rather than those who are academically or athletically gifted. See SDCL 13-33A-1 and ch 13-37.
 fn9. School Board President Orval Frahm testified that the school board looked at the factors it must consider. "[W]e were all aware of them and we spent, like I say, I thought a long time talking about the reasons -- well, Iâll be honest with you -- to deny the boundary change." However, Frahm further testified that the school board would not have made a different decision if the amount of financial impact would have been established at $11,000.
 fn10. While that may be the correct standard of review in contested cases under SDCL chapter 1-26, none of the procedural safeguards inherent in those proceedings are employed by the School Board in these cases.
 fn11. Cf. Kellogg, 479 NW2d at 151 n5:

To hold otherwise is to hold Kellogg's land hostage for the benefit of the Hoven School District for no reason other than because the district says so. If, on these facts, a circuit court's finding of an abuse of discretion is not affirmed, then SDCL 1-26-36(6) is effectively repealed and there is no longer any appeal from a procedurally correct school board decision on a minor boundary change, regardless of how patently unreasonable or unfair it is.