2004 SD 100

Kelly KIRBY, Renee Kirby, Kenneth Kirby, Renea Kirby, Francis Kirby, Theresa Kirby, James R. Brown, John Lake, James A. Lake and Gettysburg School District No. 53–1, Appellants,

v.

HOVEN SCHOOL DISTRICT NO. 53–2, Appellee.

No. 23105.

Supreme Court of South Dakota.

Considered on Briefs June 1, 2004.

Decided Sept. 1, 2004.

Craig E. Smith of Neumayr and Smith, Gettysburg, SD, for appellants.

David A. Von Wald, Hoven, SD, for appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Kelly Kirby, Renee Kirby, Kenneth Kirby, Renea Kirby, Francis Kirby, Theresa Kirby, James R. Brown, John Lake, James A. Lake (collectively, Petitioners) and the Gettysburg School District appeal the denial of their petition for a minor school district boundary change by the Hoven School Board (Board). We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Petitioners filed for a minor boundary change in order to transfer their property from the Hoven School District to the Gettysburg School District. Kelly and Renee Kirby live on a farm in the Hoven School District and have three minor children: Brook, age nine, Carson, age six, and Colton, age three. The school-age children currently attend school in Gettysburg due to open enrollment, and they represent the only children residing on land included in the petition.

[¶ 3.] Kenneth and Renea Kirby are Kelly Kirby's parents. Francis and Theresa Kirby are Kelly Kirby's aunt and uncle. All of these members of the Kirby family reside on land included in the petition.

James R. Brown, John Lake, and James A. Lake are the remaining property owners included in the petition, although they have never resided on any of the land covered by the petition.

[¶ 4.] The Gettysburg School District approved the petition. On, November 2, 2002, however, the Board denied Petitioner's minor boundary change petition, furnishing them with written reasons for the denial. Petitioners then appealed the Board's decision to the circuit court as authorized by SDCL 13–6–85. After proceedings before the court including testimony and presentation of evidence by both Petitioners and the Board, the circuit court entered findings of fact and conclusions of law affirming the Board's denial of the petition for minor boundary change. Petitioners now appeal raising as the sole issue for our review:

Whether the Board's decision to deny the minor boundary change petition was arbitrary, capricious, or unreasonable.

Affirmed.

## STANDARD OF REVIEW

[¶ 5.] We employ the arbitrary, capricious, or unreasonable standard of review on appeals concerning school district boundary disputes. *Johnson v. Lennox School Dist. No. 41–4*, 2002 SD 89, ¶ 8, 649 N.W.2d 617, 621 (quoting *Smith v. Canton School Dist. No. 41–1*, 1999 SD 111, ¶ 9, 599 N.W.2d 637, 639–40). "A decision is arbitrary and capricious when it is 'not governed by any fixed rules or standard.'" *Id.* (citation omitted). Although the circuit court determined the Board acted correctly in denying the petition, our review proceeds "unfettered by any presumption that the circuit court correctly decided the matter in its review." *Id.* Instead, this Court must examine the record in order to discern if the Board's decision was based upon and supported by substantial evidence. *Id.* (citing *Colman–Egan School*

*Dist. No. 50–5 v. Jones,* 520 N.W.2d 890, 892 (S.D.1994) (citation omitted)). "Substantial evidence has been defined as 'such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Oelrichs School Dist. No. 23–3 v. Sides,* 1997 SD 55, ¶ 10, 562 N.W.2d 907, 911 (quoting *Oldham–Ramona School Dist. No. 39–5 v. Ust,* 502 N.W.2d 574, 581 (S.D.1993)).

## ANALYSIS AND DECISION

[¶ 6.] **Whether the Board's decision to deny the minor boundary change petition was arbitrary, capricious, or unreasonable.**

[¶ 7.] There is no dispute that the petition at issue in this case implicates the minor boundary change statutory scheme.[1] Our only task on this appeal is to ascertain whether the Board's decision to deny the petition was supported by substantial, competent evidence. With this limited scope of review in mind, we have consistently utilized the following five factors to aid our review in minor boundary change decisions:

1. Whether the petitioners are more closely aligned to the economic, social

and religious life of the community into which they are being transferred.

2. Whether there is bus service to the residence.

3. Whether the district line which places their property in the current district was drawn in an arbitrary fashion.

4. Whether petitioner's child has special needs best met in the District petitioners are attempting to join.

5. Whether the petitioners live closer to the school district they are joining as opposed to the district they are leaving.

*Johnson,* 2002 SD 89, ¶ 11, 649 N.W.2d at 622; *Smith,* 1999 SD 111, ¶ 9, 599 N.W.2d at 640; *Sides,* 1997 SD 55, ¶ 11, 562 N.W.2d at 911; *Colman–Egan,* 520 N.W.2d at 892. Both the Board and circuit court applied the above factors in denying Petitioners' request. After a review of the record, we believe substantial evidence exists to support the Board's decision to deny the petition. We address each of these factors in turn.

### *Petitioners' Alignment with Gettysburg School District*

[¶ 8.] Although they do some business in Hoven, both the Board and circuit court

---

1. SDCL 13–6–84.1 sets the following criteria for boundary changes:

    (1) The boundary of the area proposed to be transferred shall be coterminous at some point with the common boundary of the two school districts[.]

    (2) Children must reside within the boundary of the area to be transferred, unless it is an area change initiated by a school board as provided in § 13–6–84.2.

    SDCL 13–6–85 further provides in pertinent part:

    A boundary change, affecting not more than two percent of the assessed valuation and not more than two percent of the tax-exempt acreage or other tax-exempt property to be determined at the discretion of the school district from which the area is to be taken, may be made upon an application for a boundary change to the school board of the school district from which the area is to be taken and to the school board of the school district to which the area is to be annexed, in the form of a petition signed by all of the owners of land, excluding land owned by the state or any other political subdivision in the area to be transferred by the boundary change. Copies of the petitions shall also be delivered by the petitioners to the board of county commissioners having jurisdiction over the school districts affected.

    There is no dispute the statutory requirements are met in this case: the land included in the petition constitutes 1.99% of the Hoven School District's assessed value; three children live on the land included in the petition; the land is conterminous with the Gettysburg School District; and all registered voters residing on the land signed the petition.

found that Petitioners were more closely aligned to the social, economic, and religious life of the community of Gettysburg. This factor favors the Petitioners.

### Bus Service

[¶ 9.] Currently, Gettysburg does not provide bus service to the two Kirby children who open-enroll to its school district. Although there was some discrepancy at the Board meeting, at trial a Gettysburg official indicated it would provide bus service to the Kirby residence if the petition was granted. Hoven School District indicated it would provide bus service to Lebanon, South Dakota, approximately eight miles from the Kelly Kirby residence where the school-age children reside. While this factor certainly favors the Kirby family with children, see Smith, 1999 SD 111, ¶ 15, 599 N.W.2d at 641, it does not affect the remaining Petitioners who do not have children in need of bus service.[2]

### Arbitrariness of School District Boundaries

[¶ 10.] The Board and circuit court found that the boundaries of the Hoven School District were not arbitrarily drawn. While Petitioners are correct in pointing out this Court approved a minor boundary change transferring property from the Hoven School District to the Gettysburg District in Kellogg v. Hoven School Dist. No. 53-2, 479 N.W.2d 147 (S.D.1991), that decision did not specifically find that the entire Hoven district was arbitrarily drawn.

[¶ 11.] On the other hand, the Board and circuit court found that the petition's proposed boundary would result in the Hoven School District's boundary becoming arbitrarily drawn. The circuit court again noted that the sole petitioners with minor

children living on the land included in the petition, Kelly and Renee Kirby, live only three miles from the Gettysburg school district. Nevertheless, the petition includes land four and one-half miles further east, and two miles further south, and one and one-half miles further north than the Kelly and Renee Kirby property. The land included in the petition forms a checkerboard pattern. Very little of the extra land is needed to connect the Kelly and Renee Kirby land to the Gettysburg boundary. The circuit court also observed that the land included in the current petition lies at the end of peninsula of land formed as a result of a previous boundary change. Based on the record before us, "[t]here was substantial evidence for the circuit court to find that the original boundary was not drawn in an arbitrary fashion and to find that the new boundary would be arbitrary." Sides, 1997 SD 55, ¶ 22, 562 N.W.2d at 913.

### Special Needs of the Children

[¶ 12.] None of the children residing on the land included in the petition have special needs.

### Distance of Petitioners from Hoven and Gettysburg School Districts

[¶ 13.] The Kelly and Renee Kirby family, the only petitioners with minor children residing on the land included in the petition, lives thirteen miles from Gettysburg and slightly less than twenty-one miles to Hoven—a difference of less than eight miles. We have previously indicated that distances of nine and one-half miles, Jones, 520 N.W.2d at 893, and twelve miles, Oldham–Ramona, 502 N.W.2d at 584 was "not so significant as to result in

2. Although Petitioner John Lake has two school-age children, they live in Gettysburg and have never resided on the land included in the petition. Thus, the interests of these children are not germane to the minor boundary change petition before us.

much longer bus rides." The Kirby's have not raised any particular reasons why this brief difference would be of special concern. *See id.* Additionally, we note that while all of the roads from the Kirby residence to Gettysburg are gravel, all but eight miles of the road to Hoven are paved. This is significant because in times of inclement weather, paved roads are cleared first. Day to day travel is also faster on paved roads. Considering these observations and the fact that this factor only applies to the two Petitioners who have minor children living on the land included in the petition, we are unable to say this factor indicates the Board acted unreasonably.

### Other Factors

[¶ 14.] In addition to the above factors, the Board also considered economic loss in granting this particular petition for minor boundary change. Economic factors, when considered "in conjunction with other relevant factors," may be valid considerations for a school board to take into account in reviewing these types of petitions. *Sides,* 1997 SD 55, ¶ 28, 562 N.W.2d at 913 (emphasis omitted); *see Jones,* 520 N.W.2d at 893 ("[W]e have never held that a school district's economic interests are irrelevant in considering a boundary change petition." (quoting *Oldham–Ramona,* 502 N.W.2d at 582)). Economic loss was certainly not the only factor the Board considered, however, as the analysis above indicates.

[¶ 15.] Here, it appears that rather than necessity or convenience of children to attend a different school district, the majority of Petitioners were primarily motivated by financial and other concerns. In this case, both the Board and circuit court placed emphasis on the fact that only Kelly and Renee Kirby had minor children who would be directly affected by the

boundary change and that only a small portion of the land contained in the petition would be needed to move their property into the Gettysburg school district. Yet, the other Petitioners' land was tacked onto the petition seemingly in an effort to move as much property into the Gettysburg district as would be allowable under SDCL 13–6–85. At trial, Petitioners' consistently identified wanting to help out the Gettysburg school district because of a perceived imbalance between it and the Hoven school district.

[¶ 16.] In sum, the factors commonly used to guide our analysis in this type of case suggest the Board acted reasonably in denying Petitioners' minor boundary change petition. Under our limited standard of review, the relevant inquiry is not what this Court would have decided but whether the Board relied upon substantial evidence in making its decision. We therefore affirm the judgment of the circuit court finding that the Board did not act arbitrarily or capriciously in denying the petition.

[¶ 17.] KONENKAMP and ZINTER, Justices, concur specially.

[¶ 18.] SABERS and MEIERHENRY, Justices, dissent.

ZINTER, Justice (concurring specially).

[¶ 19.] I write only to make explicit the dispositive fact that this "minor" boundary change had little to do with our five factors that concern the convenience and education of the children residing on the property to be transferred. Rather, the evidence reflects that the three Kirby children were only nominally involved, and this change was sought primarily for political and economic reasons; i.e., a perceived economic imbalance in the two school districts. That purpose, however, does not justify a "minor boundary

change" under SDCL 13–6–85 and our precedent. Instead, the Legislature has provided alternative methods to change boundaries for the purposes these petitioners espoused. Therefore, I join the court's opinion.

[¶ 20.] Under our precedent, proposed boundary changes are examined under five factors. *See Johnson v. Lennox School Dist. No. 41–4*, 2002 SD 89, ¶ 11, 649 N.W.2d 617, 622. If "the record indicate[s] the board rewrote or ignored the factors applicable to consideration of such petitions," its decision is arbitrary, capricious, and an abuse of discretion. *Id.* at ¶ 10, 649 N.W.2d at 621. Moreover, a "Board's decision [that] relies on factors *not intended to be considered* ... [also] renders the decision arbitrary and capricious, warranting reversal." *Id.* at ¶ 30, 649 N.W.2d at 625.[3] (emphasis added).

[¶ 21.] Here, the boundary change was sought for purposes not intended to be considered. The real purpose of this proposed "minor" boundary change is reflected in the trial court's findings of fact, entered after it heard the evidence and witnesses presented at trial. Those unchallenged findings reflect that:

(1) This petition sought to move more than fifty-four, quarter-sections of land, having an assessed valuation of over $3 million. Although this was the maximum amount of property subject to transfer under the minor boundary change statute, the change would only accommodate the three children in the Kirby family, and that family owned only eleven of those fifty-four quarter sections.

(2) Only the Kirby family had children with educational needs, and those children already attended school in Gettysburg under open enrollment.

(3) Seven of the nine petitioners had no minor children needing an education, and except for the Kirby children, no children resided on any of the affected land.

(4) Three of the petitioners have never resided on the land they included in the petition.

(5) Only one quarter-section of the land was needed to connect the children's residence to the Gettysburg School District. Moreover, the large, checkerboarded land mass tacked on to the Kirby property was located at the end of an extremely narrow peninsula of land (generally only a quarter section wide) extending three miles to connect it to the Gettysburg School District.

(6) Even though the children's residence was 3 miles east of the Gettysburg School District, the proposed boundary change included land four and one-half miles further east of the Kirby children's residence, two miles south of their residence, and one and one-half miles north of their residence.

(7) The other land was not used for residences, was not contiguous to the

3. *See also, Smith v. Canton School Dist. No. 41–1*, 1999 SD 111, 599 N.W.2d 637 (considered factors); *Oelrichs School Dist. 23–3 v. Sides*, 1997 SD 55, 562 N.W.2d 907 (substantial evidence supporting the factors, also supported the Board's decision to deny the boundary change); *Colman–Egan Sch. Dist. No. 50–5 v. Jones*, 520 N.W.2d 890 (S.D. 1994) (finding that the Board's disapproval of the boundary change was substantially supported by the record); *Oldham–Ramona Sch. Dist. v. Ust*, 502 N.W.2d 574, 584 (S.D. 1993) ("Because the board weighed the appropriate factors in considering Jensens' petition, its disapproval of the petition was not clearly erroneous, arbitrary, capricious or an abuse of discretion."); *Kellogg v. Hoven Sch. Dist. No. 53–2*, 479 N.W.2d 147 (S.D.1991) (reversed because decision not based upon the factors); *Shumaker v. Canova Sch. Dist. No. 48–1*, 322 N.W.2d 869 (S.D.1982) (considered factors).

Gettysburg school district, and was *"included by the other petitioners for the sole purpose of reforming the imbalance perceived by the petitioners between the Gettysburg school district and Hoven school district."* [4] (emphasis added). Thus, even though the presence of three children made it possible for Petitioners to fashion an argument under the five factors, the trial court's findings reflect that the sole purpose of this petition was political and was unrelated to the five factors used to determine minor boundary disputes.

[¶ 22.] Consequently, this type of political dispute must be resolved through other alternatives provided by the Legislature. Those alternatives include school district (or voter initiated) reorganizations, and school district initiated and voter approved boundary changes. State action is also possible if taxable property in both districts is insufficient "to provide educational opportunities equal in comparison." SDCL 13–6–2(2).

[¶ 23.] Absent such State action, the two local alternatives provide relief. First, individual school boards or district voters may initiate a reorganization under SDCL 13–6–10 *et seq.* to correct the problem at issue here. Second, if a reorganization is not feasible or desired, the Legislature has provided a "release valve" by which the Gettysburg School District alone could have initiated this boundary change. *See* SDCL 13–6–84.2 (which provides for public hearings in both districts and a public vote).

[¶ 24.] Significantly, the Legislature specifically dictated that this second alternative is the method for changing boundaries in cases like this. The Legislature expressed its policy that political boundary changes, proposed for reasons other than children "residing on the property to be transferred," must be initiated by the school board under the alternative procedure in SDCL 13–6–84.2, rather than the minor boundary change procedure utilized by petitioners under SDCL 13–6–85. *See* SDCL 13–6–84.1(2).

[¶ 25.] Here, it is acknowledged that the problem at issue is broader than three children residing "on the boundary." As even the dissent concludes, "it should be obvious to the objective viewer that, at a minimum, *almost all* real estate currently in the Hoven School District south of the northern tier of Gettysburg Township[s] should be in the Gettysburg School District to eliminate the current arbitrariness of the school district boundaries." *Infra* ¶ 39 (emphasis original). However, this problem with relative property values and boundaries in both districts is a matter not properly addressed under the minor boundary change statute and the cases interpreting it.

[¶ 26.] Therefore, the Hoven District did not err in concluding that the petition for a "minor" boundary change was not the proper remedy. As the trial court correctly noted after hearing the witnesses testify:

The purpose of the law allowing the minor boundary change [under SDCL 13–6–85] is to accommodate students. Two arguments support this conclusion. First, children must reside in the area to be transferred. SDCL 13–6–84.1(2). Second, the factors which the school board is required to consider deal pri-

---

4. The circuit court also found that the Hoven School District offered to grant the boundary change to the affected family's land as well as unaffected land owned by relatives, but: "petitioners refused the offer because it would not serve their purpose of reforming the perceived imbalance between the Gettysburg School District and the Hoven School District." Petitioners have not attacked this finding of fact.

marily with the convenience of the student. (Citation omitted). It is not the purpose of the minor boundary change to reform districts for political, social or economic reasons (like supporting your alma mater or running for school Board or undoing a perceived imbalance).

This reasoning is correct, and there is overwhelming evidence that this petition was initiated for a political purpose not intended to be addressed under SDCL 13–6–85. Therefore, Petitioner's remedy lies with the other legislative alternatives for boundary changes.

[¶ 27.] KONENKAMP, Justice, joins this special writing.

SABERS, Justice (dissenting).

[¶ 28.] The petition for a minor boundary change from the Hoven School District met all of the requirements of the South Dakota statutes [5] and all of the key factors of recent South Dakota cases on minor boundary changes. Despite that, the Hoven School District, for economic and improper reasons, denied the petition arbitrarily, capriciously and unreasonably. The circuit court committed reversible error by affirming the improper reasoning and focusing on the economic position of the Hoven School District instead of the children, parents and factors approved in *Johnson v. Lennox School District No. 41–4*, 2002 SD 89, 649 N.W.2d 617; *Smith v. Canton School District No. 41–1*, 1999 SD 111, 599 N.W.2d 637; and *Kellogg v. Hoven School District No. 53–2*, 479 N.W.2d 147 (S.D.1991). We should reverse and remand for all of these reasons.

**[¶ 29.] SOUTH DAKOTA LAW ALLOWS MINOR BOUNDARY CHANGE PETITIONS WHEN THE STATUTORY REQUIREMENTS AND CASE LAW GUIDELINES ARE MET.**

[¶ 30.] SDCL 13–6–84.1,–85, & –86 provide for minor boundary changes. As indicated, this petition meets all of the statutory requirements. The Legislature, when establishing these statutes, clearly wanted a release valve that could be used to make changes in a school district without a total reorganization. These minor boundary change statutes have been with us for more than 70 years. 1931 SD Session laws ch. 138 § 173. It is time for the school districts to honor them according to the *letter* and the *spirit* of the law.

[¶ 31.] The Board, circuit court, and the majority opinion properly state the factors to be considered when determining whether to allow a minor boundary change, but then fail to give those factors proper weight. Instead, those opinions rewrite the factors and place great emphasis on the perceived economic motivation of the petitioners. The record simply does not support the determination that the Board's decision was supported by "substantial, competent evidence." Majority opinion, ¶ 6. A review of the Board's findings for each factor indicates that the Board's only real justification for denying the boundary change was its concern of economic loss.

*Alignment with the community to which transfer is being sought*

[¶ 32.] The Board, circuit court, and the majority opinion all concede that Petitioners, all voters, residents and land-

---

5. Even the majority opinion concedes:

There is no dispute the statutory requirements are met in this case: the land included in the petition constitutes 1.99 of the Hoven School District's assessed value; three children live on the land included in the petition; the land is conterminous with the Gettysburg School District; and all registered voters residing on the land signed the petition.

owners are more closely aligned to the economic, social and religious life of the Gettysburg School District. This factor must be decided for Petitioners.

### Bus Service

[¶ 33.] The Gettysburg School District will provide bus service to Petitioners' door. The Hoven School District indicates that it will provide service to Lebanon, South Dakota. This is eight miles from the children's residence. *Smith,* 1999 SD 111, 599 N.W.2d at 641. The majority opinion's determination that this factor does not affect the Petitioners who do not have children is irrelevant. The question to be addressed is whether there is bus service to the residence, not whether every Petitioner can claim a benefit or detriment under a particular factor. This factor must clearly be decided for Petitioners.

### Arbitrariness of School District Boundaries

[¶ 34.] Far from being supported by substantial and competent evidence, the Board's finding on this factor was nothing more than the bare statement:

> The original Hoven School District boundaries were not arbitrarily drawn and the proposed minor boundary change would make the boundaries arbitrarily drawn.

The majority opinion attempts to give this finding some support, but fails in two respects. First, it is not the function of this Court to dredge up factual support for the Board's findings. On the contrary, we must hold the findings arbitrary unless there is substantial evidence to support them. Second, the majority opinion completely ignores the primary argument and support offered by Petitioners. The argument is worthy of reconsideration:

> The existing Hoven School District is the result of consolidation more than

thirty (30) years ago. At that time there were in excess of 15 schools operated by the Hoven School District within its boundaries. Since consolidation, the only remaining high school and elementary school being operated in the Hoven School District are in Hoven on the north boundary of Potter County. The map attached to the petition shows a substantial amount of the Hoven School District (including a township two (2) miles straight south of the Gettysburg School District) is substantially closer to the school in the Gettysburg District. (See Appx. 7, 8). The current school district boundaries are reflective of a time passed. Additional facts show the boundaries as currently drawn are arbitrary. Co-oping between schools for athletics and the fact that Hoven co-ops with schools farther to the north and to the east which would be 60 to 70 miles from the Hoven School District's southwestern boundary, further show the Hoven School District boundaries are arbitrary. Considering sixteen percent (16) or thirty-three (33) Hoven School District students attend the Gettysburg School District and none of the students in the Gettysburg School District attend the Hoven School District, the record establishes an archaic and out-dated school boundary for the Hoven School District. (See Appx. 7, 8 which are attached.)

In *Smith* at 641, the Court found the map introduced as an exhibit substantiated the issue that the district line which placed the property in the current district was drawn in arbitrary fashion. The Court, in *Kellogg v. Hoven School Dist. No. 53–2,* 479 N.W.2d 147, found an almost identical map to be in favor of the petitioner. *Kellogg* at 152. (See Appx. 7 and 8). A large part of the land base in the Hoven School District lies

closer to the Gettysburg school than the Hoven school. The fact the Hoven School District boundary was found in 1991 to be arbitrary and the only substantive change since 1991 is that the Hoven School District now operates one attendance center in Hoven on the far northern boundary and has closed all other attendance centers in its district, mandates the same finding.

This factor must be decided in favor of Petitioners.

### Distance to the Gettysburg School District

[¶ 35.] The Kirbys live 13 miles from the Gettysburg school and 21 miles from the Hoven School. The majority opinion and the Board rewrite this factor to inquire about the quality and type of roadway connecting Petitioners to the schools. However, this factor clearly cuts in favor of Petitioners and must be weighed accordingly.

### Special Needs of the Children

[¶ 36.] There are no special needs of the children.

### Other Factors

[¶ 37.] The majority opinion focuses heavily on the perceived motivation of Petitioners. However, if Petitioners meet the statutory requirements, which they do, and if the factors weigh in favor of Petitioners, which they do, Petitioners' motivation is irrelevant. Our function is to determine whether the Board acted arbitrarily and capriciously. A fair reading of the Board's findings in light of the statutes and factors indicates that the Board did act arbitrarily, and that should be the end of this Court's inquiry. There is no factor or statutory criteria which requires an examination of Petitioners' motives. The majority opinion sanctions the Board's attempt to shield itself from economic loss by simply rewriting the factors.

[¶ 38.] The Board also relied heavily on its finding that:

The Board is concerned that if it allows this comparatively large petition, similar petitions will be presented in the future, creating a domino effect. This petition and future petitions will seriously affect the economic viability of the Hoven district.

As Petitioners note, we have addressed this type of reasoning in the past and found it to be unconvincing. In *Kellogg*, 479 N.W.2d at 152, we held:

Board's reasons for denying Kellogg's petition dwell almost exclusively on the *hypothetical* financial impact the boundary change could have on the Hoven district, and fail to discuss any of the compelling factors which support the granting of the petition.

As Petitioners point out:

At the time, the Hoven School District held 65 of the assessed valuation of the total area, but only 37 of the total enrolled pupils, including the 40 pupils it pays to send to the Gettysburg district.

Twelve (12) years later, the Hoven School District has 61.7 of the assessed valuation of the total area and 35.5 of its enrolled students. Thirty-three (33) or sixteen percent (16) of its students are open enrolled to attend the Gettysburg school.

There have been numerous minor boundary changes, but this "tax haven" school district, after 30 years, remains substantially intact. When a district closes approximately 15 attendance centers through the years and has but one location remaining on the far north boundary, and that district has sport co-

ops with schools substantially farther north and east, minor boundary changes are not only foreseeable, but reasonable acts of taxpayers and landowners to be a part of the community in which they live. The legislature reserved this power to the citizens seventy years ago allowing for flexibility and knowing school boundaries must evolve with the times.

. . .

The Gettysburg School District has a tax valuation of $101,834,112 and educates 320 children. The Hoven School District has a tax valuation of $164,256,260 and educates 176 children. Thirty-three (33) or sixteen percent (16) of the students residing within the boundaries of the Hoven School District attend school in the Gettysburg School District. Lakes and Brown, who join in the petition, have children or grandchildren residing in the Gettysburg School District. They desire to have some of their land included in the district that educates their children. Taxes are higher in the Gettysburg School District. The Gettysburg School District receives $3,889 for each student who resides in the Hoven School District and attends the Gettysburg school through open enrollment. Instead of $3,889 for each of the three Kirby children when they attend the Gettysburg school if the petition is granted, the Gettysburg School District will receive an additional $8,745 due to increased tax base.

Hoven School District is making the same argument that we rejected in *Kellogg*, 479 N.W.2d at 152. That argument is less viable today than it was in 1991 and should be rejected by the Court. As Petitioners have shown, the Hoven School District:

has a larger tax base, lower taxes, substantially less students to educate and a large percentage of its children attending the school district with less tax base.

[¶ 39.] Petitioners accurately portray this Court's prior statements concerning economic factors:

The court has consistently criticized "a school board's excess reliance on economic factors as a basis for denial of a boundary change petition." *Johnson*, ¶ 26, *Oldham–Ramona*, 502 N.W.2d at 582. The court has repeatedly provided "school districts do not have a vested right to retain their existing status or territory. As creatures of the legislature they are subject to periodic change, alteration or abolishment." *Johnson*, ¶ 26, citing *Nelson v. Deuel County Bd. of Education*, 80 S.D. 559, 563, 128 N.W.2d 554, 556 (1964) (citations omitted). Accord *McLaughlin School Dist. 15–2 v. Kosters*, 441 N.W.2d 682, 685 (S.D.1989); *Oldham–Ramona*, 502 N.W.2d at 582. In *Johnson*, the percentage of land to be transferred was 1.97 (under the 2 ceiling). In that case it was found that the school board denying the petition was clearly over-reliant on economic factors as a basis for denying the boundary change when the petitioners met the criteria set forth above. The Court further finds in *Johnson*, ¶ 27: "the economic effects of a minor school district boundary change are largely taken into account by the statutory limitations on such a change. SDCL 13–6–85 limits a 'minor' boundary change to property affecting not more than two percent (2) of the assessed valuation of a district."

[¶ 40.] I encourage the Court to study Appendix 7, attached to this writing. It should be obvious to the objective viewer that, at a minimum, *almost all* real estate currently in the Hoven School District south of the northern tier of Gettysburg-Township should be in the Gettysburg School District to eliminate the current arbitrariness of the school district boundaries.

[¶ 41.] For all of these reasons I respectfully dissent. We should reverse and remand consistent with this writing.

[¶ 42.] MEIERHENRY, Justice, joins this dissent.

ATTACHMENT